259 P.2d 862 (1953)
GENERAL ACC. FIRE & LIFE ASSUR. CORP., Limited
v.
MITCHELL et al.
No. 16845.
Supreme Court of Colorado, en Banc.
July 6, 1953.
*863 Clarence L. Bartholic, Denver, for plaintiff in error.
Joel E. Stone and Francis S. Mancini, Denver, for defendants in error.
ALTER, Justice.
John G. Mitchell and his wife, Leona Mitchell, and four of their children, began garnishment proceedings to collect from the General Accident Fire and Life Assurance Corporation, Ltd., judgments which they had obtained against Vern L. Greathouse and M. M. Peterson, said judgments being based upon injuries received by the plaintiffs in a collision of their car with an automobile driven by Greathouse. General Accident Fire and Life Assurance Corporation, Ltd., was garnisheed in the action, and upon traverse having been filed to its answer, trial was had resulting in verdicts upon which judgments were entered, and General Accident Fire and Life Assurance Corporation, Ltd., is here by writ of error seeking a reversal of such judgments.
We will herein refer to the Mitchells, father, wife and four children, as Mitchells; to Vernon L. Greathouse as Greathouse; to M. M. Peterson as Peterson; to General Accident Fire and Life Assurance Corporation, Ltd., as General.
Plaintiffs in the six complaints filed in the original action allege injuries received *864 by the respective plaintiffs in an automobile collision between a car driven by John Mitchell, in which the five other plaintiffs were passengers, and one driven by Greathouse. The damages for which judgment is sougth are in different amounts, and in each complaint is the following allegation:
"3. At the time and place first aforesaid, defendant Greathouse was an agent and employee of defendants Peterson, Securities Credit Corporation, and Doolittle, and of each of them, and was then and there, while driving the automobile driven by him as aforesaid and when he drove said automobile against the automobile in which plaintiff [plaintiffs] was a passenger as aforesaid, driving the automobile driven by him as aforesaid, for and on behalf of defendants Peterson, Securities Credit Corporation, and Doolittle, and each of them, and in the course of and as a part of such agency and employment for and by defendants Peterson, Securities Credit Corporation and Doolittle, and each of them."
Greathouse in his answer admits the accident, denies each and every allegation in plaintiffs' separate complaints "except that at the time mentioned therein, he was acting as the agent of the defendant M. M. Peterson."
Peterson, in his answer, denied that Greathouse was his agent or employee at the time of the accident; generally denied all other allegations in said complaints alleging that "this defendant has not and cannot obtain sufficient knowledge or information upon which to base a belief, and, therefore, denies the same." Peterson filed a cross-complaint against defendant Vernon L. Greathouse in which he prayed that "if judgment be rendered in favor of the plaintiff [plaintiffs] and against this cross-complainant that: (1) the Court find, declare, and order that said judgment be paid by the defendant Greathouse, (2) that in the event all or any part of said judgment is not paid by the Defendant Greathouse, that the Court declare and order that the cross-complainant have judgment against defendant Greathouse for such sums of money as this cross-complainant may have been required to pay for said judgment, (3) that this cross-complainant recover his costs, * * *"
Defendant Doolittle's answer is a general denial.
Defendant Securities Credit Corporation denied that Greathouse was its agent or employee at the time of the accident and denied all other allegations in the complaint.
For a complete understanding of the factual situation giving rise to this litigation, we were compelled to study and carefully consider the record filed in this court in an action wherein Peterson was plaintiff in error and the Mitchells; defendants in error here, were parties, which action was subsequently dismissed without final determination by this court. Said records, consisting of three volumes, were offered by the Mitchells as Exhibit A and admitted without objection thereto.
From these records we find that there were six separate actions begun by the Mitchells against Vern L. Greathouse, M. M. Peterson, Securities Credit Corporation, and Bennye Doolittle, in which the Mitchells sought damages against these named defendants for injuries received in an automobile collision occurring between an automobile in which the Mitchells were riding and one driven by defendant Greathouse. Upon trial of these six actions consolidated into one, several judgments, aggregating $9,500 and costs, were entered. Subsequently, the judgments not having been satisfied, garnishee summons were served on General, seeking to recover thereby on General's standard automobile combination policy issued to Greathouse. General answered; the Mitchells filed their traverse thereto; and, upon trial of the issues, judgments were entered on the verdict of the jury in the aggregate amount hereinbefore mentioned.
The depositions of Peterson and Greathouse were taken and appear in the record as exhibits although both of them testified during the trial. Peterson testified that he was in the house trailer business and occasionally sold second hand cars; that he had authorized Greathouse to pay $100 on the purchase price of the automobile involved *865 in the accident; that on the afternoon of January 4, 1945, he and Greathouse met by Greathouse's appointment with Mrs. Doolittle to complete the purchase of the automobile, and arrived at the appointed place in Greathouse's automobile, upon which Greathouse carried a standard automobile combination policy with General. He admitted that Greathouse, in connection with the purchase of the car, was his agent and that he was interested in purchasing the car so that he could make a few hundred dollars out of its resale. Subsequent to the collision resulting in the wreck of the purchased car, he executed and delivered his promissory note to Securities Credit Corporation for the amount advanced in making the purchase, and secured the same by a chattel mortgage upon the car, in which chattel mortgage there was a warranty of title.
At the conclusion of plaintiffs' evidence in the original proceedings, the court, on motion of counsel for Securities Credit Corporation and Bennye Doolittle, dismissed the actions as to them and denied a like motion for Peterson. The court, in passing upon Peterson's motion for dismissal based upon the ground that there was no evidence of agency, stated:
"The Court: As I see it, the sale was made at the bank that night. The car was Peterson's car right then and there, and he was there to take possession of it. He could have taken possession of it had he wanted to, but he asked Greathouse to drive it to his place of business. At that time Greathouse was Peterson's agent, performing services for Peterson at Peterson's request; and he was acting within the scope of his agency and his employment in driving the car from downtown Denver to Peterson's place of business. He was Peterson's agent and Peterson is liable. The motion is overruled."
At the conclusion of all of the evidence, Peterson moved the court that the question of negligence be withdrawn from the jury "and to submit the amount of damages only," which motion was granted. Thereupon Peterson moved for a directed verdict in his favor, which motion was denied. Prior to these motions by Peterson, counsel for the Mitchells moved that the court enter an order determining "as a matter of law under the evidence in this case, withdrawing from the consideration of the jury and entering its verdict and finding that the defendant Greathouse and defendant M. M. Peterson are guilty of negligence under the evidence in this case, and submit to the jury solely and only the question of the amount of damages, if any, that the respective defendants, namely, Greathouse and Peterson, should have to respond, Greathouse as agent of Peterson.
"The Court: What do you say about that, gentlemen?
"Mr. Wormwood: I have nothing to say, Judge.
"Mr. Grant: Neither have I.
"The Court: Then, by agreement of all counsel, the question of negligence is not for the jury.
"Mr. Wormwood: That's right. I can't see any defense here.
"I have two motions to make. The first motion, on behalf of defendant Peterson, is for a directed verdict, on the same ground as stated in my motion for dismissal at the end of plaintiffs' case.
"The Court: For the same reason, the motion is overruled."
Counsel for neither party requested any instruction, and the first sentence of the court's instruction, to which no objection was interposed by either counsel reads:
"Your are instructed that all issues of fact have been eliminated from your consideration except the assessment of damages which the various plaintiffs are entitled to, if any."
In Exhibit A it may be said that there were three principal questions of fact for the jury's determination had it not been for the court's rulings on the various motions interposed by plaintiffs' and defendants' counsel. Those three principal facts are: 1. Was defendant Greathouse negligent;
2. was Greathouse the agent of Peterson and did the accident arise out of and in the *866 course of his agency; 3. were the injuries sustained by plaintiffs proximately caused by Greathouse's negligence and, if so, the amount necessary to compensate the plaintiffs for the injuries thus received?
We think it established beyond doubtin fact it is admittedthat Greathouse's negligence was the proximate cause of plaintiffs' injury; consequently, the court properly ruled, as a matter of law, that this question should not be for the jury's consideration. The trial court found from the evidence that Greathouse was Peterson's agent and while so engaged negligently occasioned plaintiffs' damages, and no objection thereto was interposed by counsel for either Peterson or Greathouse. No instruction was tendered by counsel for Greathouse or Peterson on the question of agency, and had one been tendered it might have been properly refused by the court under the presented evidence. The jury returned its verdicts in separate amounts against Greathouse and Peterson; whereupon, as we have said, Peterson sued out a writ of error to review the judgment against him, and the record lodged here is part of Exhibit A, which, as we have stated, was offered by plaintiffs, and no objection made thereto. Subsequently, and after garnishment proceedings were commenced and a hearing thereon had, the writ of error in the Peterson case was dismissed, and, as a result thereof, the judgment against Peterson and Greathouse became a final judgment. By the final judgment in the original action it was determined that: 1. Greathouse was negligent as charged in the complaint; 2. Greathouse was Peterson's agent and acting within his agency at the time of the automobile accident; 3. the several plaintiffs were entitled to the damages set forth in that judgment and that Greathouse and Peterson were liable for the payment thereof.
Here it is conceded by counsel for plaintiffs, as well as General, that in the garnishment proceedings plaintiffs are subrogated to the rights of Greathouse under General's policy in asserting their claims against General and are entitled to enjoy the same rights and liabilities that Greathouse would have were he prosecuting this claim against General. With this statement we are in accord.
It, therefore, becomes necessary to examine General's policy with Greathouse to determine what, if any, liability General would have under the terms of its policy if an action had been brought by Greathouse himself. The policy here in question provides:
"Such insurance as is afforded by this policy for bodily injury liability and for property damage liability with respect to the automobile classified as `pleasure and business' applies * * * with respect to the use of any other automobile by or in behalf of such named insured or spouse. This insuring agreement does not apply: * * * [f] to any accident arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place."
The policy also provides:
"As respects such insurance as is afforded by the other terms of this policy
"(a) Under coverages A and B the company shall
"1. defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company;" (Italics ours.)
In the original action it is admitted that Peterson was operating a business properly called a sales agency; he purchased the automobile involved in the accident for resale, and it has been definitely and finally determined that in connection with the operation of his business Peterson constituted Greathouse his agent to deliver his purchased automobile to his place of business and that Greathouse, while so engaged, negligently occasioned plaintiffs' damage. This evidence conclusively established that the injuries of which plaintiffs complain resulted from an accident arising *867 out of the operation of a sales agency, and, consequently, not within the coverage of the policy. Under the express terms of the insurance policy General was not liable to Greathouse unless its course of conduct in connection with the litigation and representation of Greathouse amounted to either an estoppel or a waiver of its reserved rights under the provisions of its policy. Exhibit A, which we have heretofore said consisted of three volumes and a part of which was the record in this court, entitled M. M. Peterson v. the Mitchells, discloses that the accident occurred on January 4, 1945, and the amended complaint was filed on March 9, 1945. It further discloses that the answer of Greathouse to the amended complaint was filed on March 15, 1945. It is disclosed by the record in the instant case that on March 14, 1945, Greathouse executed and delivered to General and its co-insurer the following instrument:
"In the six suits brought against me by John Mitchell and members of his family in the District Court of the City and County of Denver growing out of the accident of January 4th last, it is agreeable with me that you employ counsel to defend each of these suits in my behalf, with the understanding that by so doing you or either of you do not thereby waive or prejudice any of your rights which you may be entitled to claim under the combination policy issued to me, No. GC 504805, of date June 18th, 1944, upon my Chevrolet automobile. (Signed) Vernon L. Greathouse."
It thus will be seen that prior to the filing of Greathouse's answer in the original action he had executed and delivered what may be termed a "non-waiver agreement" under which General proceeded to represent him in the trial of the cause. While it does not appear in the record here, counsel for Mitchells make the statement that on February 13, 1945, Frank L. Grant filed a motion for the purpose of securing a physical examination of the plaintiffs.
For aught that appears in the record, the "non-waiver" is valid and enforceable as against Greathouse who has made no attack thereon and has raised no question respecting it. It does not appear from the record that the Mitchells had any notice whatever of the execution and delivery of the "non-waiver agreement" and notice to them was wholly unnecessary. The fact, if it be such, that a motion was made for a physical examination of plaintiffs, was in the course of the investigation of the accident, and, under the terms of the policy, this was General's right. It is contended here by counsel for the Mitchells that General, by defending Greathouse in the original action in which the Mitchells sought damages for the injuries resulting from the accident, it thereby either waived the provisions of its policy or was estopped to rely thereon. It will be noted that under the policy General undertook to defend Greathouse in any action against him alleging injury or destruction and seeking damages therefrom "even if such suit is groundless, false or fraudulent;" There is ample authority for the statement that if General had been requested by Greathouse to represent him in the action brought by the Mitchells and had refused and the trial thereof had resulted in a judgment against Greathouse, General would be liable to Greathouse for the amount of the judgment and attorneys fees in connection with the trial of the action.
In the instant case it appears that all the legal services that General's counsel rendered and performed for Greathouse prior to the filing of his answer were purely investigatory, and before proceeding with the actual defense in the action brought by the Mitchells, Greathouse's "non-waiver agreement" was obtained. There is nothing in the record to invalidate the "non-waiver agreement," and while there are some decisions which seemingly afford the insurer no protection under a "non-waiver agreement" as against estoppel or waiver, there is no serious question that the vast majority of states consider "non-waiver agreements" or notices of reservations of rights to be perfectly valid and enforceable. Here the insurer was, according to the contention of Mitchells' counsel, in this dilemma: If it proceeded with the performance of its contract *868 and defended Greathouse, notwithstanding its "non-waiver agreement," it became liable to the Mitchells and lost the benefit of its "non-waiver agreement" under the doctrine of estoppel or waiver; while if the insurer refused to defend the insured in the damage action and a judgment against the insurer was recovered, the insurer would, by the express terms of its policy, be liable either to the insurer or a garnishee for the amount of the judgment within the limits of its liability. Unless the evidence in the present case shows that General intentionally abandoned or relinquished a known right, there is no waiver, and unless the evidence discloses that by General's conduct it has precluded itself from asserting rights which otherwise have existed, there is no estoppel. There is a complete absence of evidence in the record, either as to waiver or estoppel. Where an insurer takes the precaution of securing a "non-waiver agreement" and thereafter enters its appearance for the insured and actively participates in the trial of a damage action arising under the provisions of the policy, neither estoppel nor waiver will preclude the insurer from asserting any right that it may have under its insurance policy in any action brought by the insured himself or the insured's judgment creditor in garnishment proceedings. We believe the following authorities directly or impliedly support us in our conclusion: Hardware Mut. Casualty Co. v. Higgason, 175 Tenn. 357, 134 S.W.2d 169; Ancateau for Use of Trust Co. of Chicago v. Commercial Casualty Ins. Co., 318 Ill. App. 553, 48 N.E.2d 440; Hill v. Standard Mutual Casualty Co., 7 Cir., 110 F.2d 1001; Kabinski v. Employers' Liability Assur. Corporation, Ltd., 123 N.J.L. 377, 8 A.2d 605; Birnbaum v. Pamoukis, 301 Mass. 559, 17 N.E.2d 885; Laroche v. Farm Bureau Mutual Automobile Ins. Co., 335 Pa. 478, 7 A.2d 361; McCann v. Iowa Mutual Liability Ins. Co. of Cedar Rapids, 231 Iowa 509, 1 N.W.2d 682; Hoosier Casualty Co. v. Miers, 217 Ind. 400, 27 N.E.2d 342; Manthey v. Amercan Automobile Ins. Co., 127 Conn. 516, 18 A.2d 397; Goldstein v. Bernstein, 315 Mass. 329, 52 N.E.2d 559; Hodges v. Ocean Accident & Guarantee Corporation, 66 Ga.App. 431, 18 S.E.2d 28; Mancini v. Thomas, 113 Vt. 322, 34 A.2d 105; Clark Motor Co. v. United Pac. Ins. Co., 172 Or. 145, 139 P.2d 570; Associated Indemnity Corporation v. Wachsmith, 2 Wash.2d 679, 99 P.2d 420, 127 A.L.R. 531; Mirich v. Underwriters at Lloyd's London, 64 Cal.App.2d 522, 149 P.2d 19; Eakle v. Hayes, 185 Wash. 520, 55 P.2d 1072; Continental Casualty Co. v. Lolley, 193 Okl. 22, 140 P.2d 1014; Snyder v. St. Paul Mercury Indemnity Co. of St. Paul, Tex.Civ.App., 191 S.W.2d 107; 29 Am.Jur., pp. 672, 673, §§ 878, 879; 45 C.J.S., Insurance § 714, page 684, et seq., 6 Blashfield, Cyclopedia of Automobile Law and Practice, p. 94, § 4062; 5 Couch Cyclopedia of Insurance Law, p. 4187, et seq., § 1175(e); Appleman Automotive Liability Insurance, p. 443; 81 A.L.R. 1382.
It is to be noted that neither counsel make any reference to Exhibit A, and apparently have entirely overlooked its importance in the determination of this case. We have read this exhibit in its entirety, and, from that reading and our study, have come to the conclusion that its consideration is basic, and, when considered in connection with the policy and the factual situation in the instant case, establishes that: (1) Greathouse's negligence was the sole and proximate cause of plaintiffs' injuries and damages; (2) Greathouse was Peterson's agent, and, while engaged as such, the accident occurred; (3) plaintiffs' judgments are final. It is likewise definite and conclusive that under the plain and unambiguous terms of General's policy, plaintiffs, subrogated to Greathouse's rights, are not entitled to a judgment against General. The court committed error in rendering its judgment.
There is another matter revealed by this record that we deem of sufficient importance to mention with our definite disapproval. Previous to the trial of this action the trial judge's predecessor compelled General to make available to plaintiffs' attorneys all correspondence between its home office and its local counsel and local agents, and all letters, telegrams and other written memoranda between General, its *869 attorneys or agents, and Greathouse, and all replies received thereto; in fact, under order of the trial court, all letters, telegrams and other written memoranda in any wise pertaining to Mitchells' action was made available to plaintiffs, and was considered by plaintiffs' counsel of sufficient importance in the trial of this action to justify the filing of a supplemental abstract of record containing exact copies or excerpts of such letters, telegrams and written memoranda. The correspondence thus introduced on the trial discloses on the part of General's former attorney, Mr. Grant, the author of some of the correspondence, a complete disregard of the ethics which should govern an attorney in the presentation of his client's cause, and some thereof contain admissions which present almost unsurmountable difficulties in defending this action. We disapprove the methods and some of the statements disclosed by the correspondence. However, we cannot conceive of any circumstances where, in a civil case, the court's order entered here was justifiable. It was a command under which the attorney was compelled to either violate a confidential relationship existing between him and his client or to disobey the order and thereby subject himself to a charge of contempt of the court. This order for production was entered by the court under the provisions of Rule 34, R.C.P.Colo., and the most casual reading thereof clearly indicates the impropriety of entering it.
We have, however, determined not to reverse this judgment because of the wholly improper and void order by the trial court because we are convinced that under the record in the case and the judgment of the trial court in the original action out of which this garnishment proceeding arose, Greathouse was not protected under General's policy, and, consequently, General could have successfully defended against any suit brought by Greathouse under the terms of the policy. This being the case, the Mitchells, being subrogated to Greathouse's rights and liabilities, could not successfully maintain any action on the policy against General.
The judgment herein is reversed and the cause remanded to the trial court with instructions to set aside its present judgment and enter judgment in favor of the garnishee and against the judgment creditors.
KNAUSS, J., does not participate.