**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, Plaintiff,**

v.

**Sally Ann SANFORD et al., Defendants.**

**Civ. No. 71–117.**

United States District Court, W. D. Oklahoma, Civil Division.

Feb. 24, 1972.

Dale Reneau, Oklahoma City, Okl., for plaintiff.

John W. Norman, Oklahoma City, Okl., for Doyle.

John R. Couch, Oklahoma City, Okl., W. J. Ivester, Altus, Okl., for Sanford.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff brings this action under 28 U.S.C.A. § 2201 for a judgment declar-

---

ing that its policy of automobile liability insurance (covering a Cadillac as the owned automobile) issued to Baxter Henry as named insured does not cover a collision in which Defendant Sally Ann Sanford, daughter of Baxter Henry, was involved while driving another car (a Chevrolet Nova) which had been leased by Henry from Click Chevrolet Company. The parties waived a jury. The Court has heard the case on its merits.

The Pretrial Order of the parties herein stipulated that the issues in the case to be tried were whether (1) the Nova driven by Sally Ann Sanford was a "temporary substitute automobile" and whether (2) estoppel was applicable to this case. At trial on the merits counsel for Defendants sought to raise an additional issue to claim coverage under the "non-ownership" clauses of the policy. However, the Court was not inclined to proceed contrary to the issues agreed to in the Pretrial Order but offered to strike the case for a later setting and order briefing on this additional issue. Counsel for Defendants decided not to accept this offer and the trial proceeded. It now appears that the non-ownership clauses in the policy are nonetheless material to the disposition of this case under the doctrine of estoppel.

The leased Nova was not listed or described in Plaintiff's policy as an "owned automobile". Under the evidence the Nova driven by the daughter at the time of the collision was not an "owned automobile" in or under Plaintiff's policy involved herein as the same was owned by Click Chevrolet Company. It appears that the Nova was not a "temporary substitute automobile" for the Cadillac within the terms of said policy.

The policy provides, in relevant part, with reference to a non-owned automobile as follows:

"*non-owned automobile*" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative other than a temporary substitute automobile; . . ."

It also provides that the persons insured are:

"(b) With respect to a non-owned automobile,

(1) the named insured,

(2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission . . ."

The Nova was a private passenger automobile. It was owned by Click Chevrolet Company, the lessor thereof. It was not owned by the named insured, Baxter Henry, (who only leased it) or Sally Ann Sanford, his relative. Whether it was furnished for the regular use of Baxter Henry or Sally Ann Sanford, a relative of the named insured, is a question of fact about which the evidentiary record is essentially silent. The evidence is also silent as to whether Sally Ann Sanford was operating the Nova with the permission of the owner, the lessor, and was doing so within the scope of such permission. Sally Ann Sanford could have been a "person insured" by the terms of the policy under the "non-ownership" clauses depending upon the answers to these two questions. Thus, there was some basis to conclude that the Nova was a "non-owned automobile" under Henry's policy with Plaintiff and it probably was so considered by Plaintiff's agents when they assumed responsibility for the collision with knowledge that it was not an "owned automobile" and not a "temporary substitute automobile." In this connection it is pertinent to note that the Plaintiff produced no evidence from its agents involved as to why responsibility for this collision was assumed by Plaintiff after all pertinent facts had been disclosed to it by its named insured (there is no claim or evidence that this is not so) even though the Court called for or invited such evidence.

Defendants assert that the Plaintiff is estopped from denying its coverage for the daughter's collision under her father's policy. This defense is essentially based, first, on Plaintiff having full knowledge or means of knowing all the facts regarding the daughter's automobile and Henry's insurance with it, and, second, conduct thereafter on its part which has prejudiced the daughter. The Court finds from the evidence that after full disclosure of all the pertinent facts to the Plaintiff, the Plaintiff assumed responsibility for the collision and so advised its insured and his daughter, undertook to investigate the collision and ultimately settled in full with the passenger on the motorcycle with which Sally Ann Sanford collided, settled in full for the loss of or damage to the motorcycle and advanced the driver of the motorcycle seventeen hundred dollars. Defendants claim that this conduct on the part of the Plaintiff misled Defendant Sally Ann Sanford and has caused prejudice to her by lulling her into inactivity regarding her liability for the collision and said advance payments by Plaintiff on her behalf to the driver of the motorcycle with which she collided and said payment by Plaintiff on her behalf for loss or damage to the motorcycle may be shown against the Defendant Sanford in the pending State Court action brought against her by the driver of the motorcycle for his personal injuries and losses.

By stipulated evidence Baxter Henry (Plaintiff's insured) gave full information to Plaintiff four days following the collision to the effect that the Nova was not listed on his policy with Plaintiff as an "owned automobile" nor did he intend to so list the same therein and that he made no claim whatsoever that the Nova was a "temporary substitute automobile" for his Cadillac which was insured with Plaintiff. It further appears from the evidence that after being furnished all pertinent facts or having the means of knowing all pertinent facts the Plaintiff stated to its named insured and Sally Ann Sanford, his daughter, that it was assuming coverage or responsibility for the daughter's collision under the policy issued to her father and thereafter investigated the collision and made the aforesaid payments.

In Security Ins. Co. of New Haven v. White, 236 F.2d 215 (Tenth Cir. 1959) it is stated:

"The general rule having pertinent application in this case is that if an insurer with knowledge of facts which would bar liability under an issued and outstanding policy continues to recognize liability by treating the policy as being in force and effect, it waives the bar and becomes estopped to plead such facts to escape liability."

In 16A Appleman Insurance Law & Practice, 9088, at p. 333, it is stated:

"To work an estoppel, there must be such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon. Accordingly, an insurer is not estopped to deny liability on a policy where the Plaintiff was not misled by the Defendant's conduct. Likewise, without proof of prejudice an estoppel could not be found to exist."

It appears that advance payments for medical and hospital costs are presumed to spring solely from humanitarian motives, unless there is evidence that such payments were made in circumstances indicating an admission of liability. See Annotation: Medical Costs—Payment by Other Party, 20 A.L.R.2d 291–300. It is commented that when such payments are made by an insurer, it is because they seek to avoid recent criticism that insurance companies force settlements by "starving out" the injured party. See Annotation: Effect of Advance Payment by Tortfeasor's Liability Insurer to Injured Claimant. 25 A.L.R.3d 1091–1092.

The advance payments in this case by Plaintiff to the injured driver of the motorcycle, James Allen Doyle, cannot be

presumed to spring from humanitarian motives, as there is no evidence that they were made to compensate him for his medical or hospital costs. There is no evidence whatever of their purpose. There is evidence that representatives of the Oklahoma Department of Public Safety had inquired of James Allen Doyle respecting his financial responsibility following the accident, as the same is required by 47 Okl.St.Ann. § 7–201 et seq., and had been informed by Plaintiff through the Doyles that the accident was covered by insurance provided by Plaintiff. Such evidence together with the advance payments to Doyle could infer an admission of Sally Ann Sanford's liability for the collision and as this is the only evidence before the Court concerning the circumstances under which the advance payments to James Allen Doyle were made, such payments could be considered as admitting liability and admissible as such.

It is generally held in jurisdictions other than Oklahoma that advance payments of medical and hospital costs are not admissible in evidence because they are presumed to spring from humanitarian impulses and not from any admission of liability. 20 A.L.R.2d 291–300, *supra.* There appear to be no decisions directly on point in Oklahoma. The character and purpose of the advance payments here is not known, so it cannot be determined that they were made in order to assist James Allen Doyle with his medical and hospital bills. The payments could have been made under circumstances indicating that Plaintiff had admitted liability of Sally Ann Sanford for the accident. It is generally held that in such circumstances, evidence of such payments may be admitted for the purpose of establishing the tortfeasor's liability. 20 A.L.R.2d 291–300, *supra.*

■ Prejudice to an insured is conclusively presumed where the insurer assumes the defense of an action with knowledge or means of knowing the facts showing non-coverage and withdraws from such defense and denies liability during or after trial or settlement. Pendleton v. Pan American Fire and Casualty Company, 317 F.2d 96 (Tenth Cir. 1963); Boulet v. Millers Mutual Insurance Ass'n of Illinois, 362 F.2d 619 (Eighth Cir. 1966). But where the insurer gives timely notice of its disclaimer and the grounds therefor to its insured, prejudice is not presumed but must be proved by the insured. City of Aurora, Colorado v. Trinity Universal Insurance Co., 326 F.2d 905 (Tenth Cir. 1964); Insurors Indemnity & Ins. Co. v. Archer, 208 Okl. 57, 254 P.2d 342 (1953). In this case, Plaintiff withdrew from any further participation in the claims asserted against Defendant Sally Ann Sanford before suit was filed against her by the Doyles. Thus, prejudice cannot be presumed but must be proved by Defendant Sally Ann Sanford.

It seems clear that the insurer's settlements with the third parties in this case, that is, the father of James Allen Doyle (for the motorcycle which was in his name) and the passenger on Doyle's motorcycle, cannot be admitted in evidence in the suit against Defendant Sally Ann Sanford. Such matters therefore do not constitute proof of prejudice. Defendant Sally Ann Sanford in the trial of the instant case made no effort to show that her preparation for the defense of the State Court case has been in any way affected, beneficially or adversely, by Plaintiff's control thereof. The only matters then which could constitute prejudice to Sally Ann Sanford are the advance payments made to James Allen Doyle by the insurer under circumstances indicating an admission of the liability of Defendant Sally Ann Sanford for the accident. The Court is informed by the parties that the admissibility of these advance payments has not been ruled on by the State Court Trial Judge either by Motion in limine or by pre-trial conference and this Court is put in the position of predicting his ruling under Oklahoma law.

Should the State Trial Judge rule that the advance payments to James Allen Doyle are not admissible, then this Court

will have guessed wrong, but the responsibility for the consequences of this Court's mistake rests with Plaintiff's preparation and presentation of this case. On the basis of the evidence presented to the Court, however, Plaintiff's advance payments appear to be evidence admissible in the State Court case.

The Court finds under the evidence herein that the Plaintiff with full knowledge of or means of knowing all the facts pertaining to coverage of the daughter's collision under her father's insurance policy[1] thereafter so conducted itself by making advance payments to the driver of the motorcycle in said collision on behalf of Defendant Sally Ann Sanford, which advance payments may be brought out in the pending State Court action between the driver of the motorcycle and Defendant Sally Ann Sanford, that she has been misled and prejudiced by Plaintiff.

■ Plaintiff by its conduct in assuming responsibility for the collision under the father's insurance policy with knowledge of or means of knowing all pertinent facts and thereafter by making advance payments to the driver of the motorcycle but not fully settling with him, which fact may be brought out in the forthcoming State Court trial to the prejudice and detriment of the Defendant Sally Ann Sanford in her defense thereof, has thereby misled and caused prejudice to the Defendant Sally Ann Sanford and Plaintiff should be estopped in these circumstances from now denying coverage for her collision.

Plaintiff argues that to find coverage in this case by way of estoppel would result in the creation of a contract of insurance where none existed before. Obviously, this cannot be done. Security Insurance Company of New Haven v. White, *supra*, 236 F.2d at p. 218. However, in the present case, the only facts not in evidence which would authorize a finding of coverage for Sally Ann Sanford's collision under the "non-ownership" clauses of the policy are whether the Nova was furnished Sally Ann Sanford for regular use and whether Sally Ann Sanford was given permission to use the Nova by the lessor and was using the same within the scope of such permission. These were facts that either were known to Plaintiff's agents or could, in the exercise of ordinary diligence, have been ascertained by them. Plaintiff's conduct in assuming responsibility for the collision and making the above-mentioned advance payments in connection therewith was consistent with Sally Ann Sanford being considered covered under the "non-ownership" clauses of her father's policy. Plaintiff is now estopped by such conduct to deny such coverage. Thus, the Court does not create a new contract of insurance by estoppel but rather enforces and effectuates the terms of an existing policy by estoppel. Security Insurance Company of New Haven v. White, *supra*, 236 F.2d 215 at p. 219.

Plaintiff is not entitled to the declaratory judgment sought by it, one of non-coverage for the collision of Defendant Sally Ann Sanford. Rather, the judgment of this Court should be that under the doctrine of estoppel the Plaintiff may not deny the coverage for said collision by virtue of its conduct with knowledge of all pertinent facts which misled and caused prejudice to Defendant Sally Ann Sanford as aforesaid.

Counsel for Defendants will collaborate and prepare an appropriate judgment based on the foregoing and submit the same to opposing counsel and then to the Court for signature and entry herein.

---

1. Plaintiff presented no evidence that it was misled by or received any false information from or that any pertinent information was withheld by either its named insured or his daughter regarding all the facts about the Nova car.