524 P.2d 626 (1974)
Linda BROWN, Plaintiff-Appellant,
v.
J. S. ROSENBLOOM and Darryl Province, Defendants-Appellees.
No. 73-222.
Colorado Court of Appeals, Div. II.
May 29, 1974.
Rehearing Denied June 18, 1974.
Certiorari Granted August 6, September 23, 1974.
*627 Gerash & Gerash, Walter L. Gerash, Denver, for plaintiff-appellant.
Fonda, Hays, Farley, Abram & Shaw, P. C., Donald E. Abram, Pueblo, for defendant-appellee J. S. Rosenbloom.
Yegge, Hall & Evans, Richard D. Hall, Denver, for defendant-appellee Darryl Province.
Selected for Official Publication.
RULAND, Judge.
Plaintiff appeals from a summary judgment dismissing her complaint. We reverse.
Plaintiff filed suit against defendants to recover damages for alleged negligence. Plaintiff's complaint, defendants' answers, and defendants' motions for summary judgment (as supported by affidavits and exhibits) reflect the following sequence of events.
One Culver Murray was confined in the Colorado State Penitentiary on charges of, inter alia, assault to commit rape. Murray became eligible for release in November of 1969, and pursuant to C.R.S.1963, 39-18-9, the Deputy Warden of the Colorado State Penitentiary requested that a determination be made of Murray's sanity. Pursuant to C.R.S.1963, 39-18-10, a parole officer filed a petition with the Pueblo County District Court, requesting a hearing as to Murray's sanity before a medical commission.
The district court entered an order appointing defendants as practicing physicians to a two-man medical commission to inquire into the mental condition of Murray. Pursuant to that order, defendants held a hearing on November 5, 1969, at the Colorado State Hospital, whereupon records concerning Murray were reviewed, Murray was questioned, and apparently defendants discussed his status with a social service worker. The guardian ad litem appointed for Murray was present throughout the hearing, and apparently the hearing consumed approximately one and one-half hours.
Following the hearing, defendants completed a report for the district court indicating that in their opinion there was "no psychotic diagnosis", and they recommended that Murray be discharged from the Colorado State Hospital. Pursuant to that report, the district court entered an order of discharge.
Plaintiff alleges that within one year from his release, Murray murdered two women and assaulted plaintiff, as well as another woman. As a result of the assault on plaintiff, she alleges numerous and serious injuries. According to the complaint, Murray subsequently pled guilty to first degree murder and was sentenced to life in prison.
Plaintiff seeks to impose liability on defendants for negligence in their examination, diagnosis, and evaluation of Murray and in not foreseeing that Murray had dangerous propensities. According to plaintiff, had defendants exercised reasonable care, Murray would not have been released from the Colorado State Hospital. Defendants deny all allegations of negligence and raise various affirmative defenses.
The trial court granted defendants motions for summary judgment, finding that: (1) Defendants, as officers of the court *628 and as expert witnesses, were immune from suit pursuant to common law principles of judicial immunity; and that (2) defendants were immune from suit under the provisions of C.R.S.1963, 71-1-24.

I

Immunity
The issue which must be determined first is the scope of any immunity which defendants may have had when acting as a medical commission.
Colorado has long recognized the common law principle of immunity for judges from civil suit. See, e.g., Hughes v. McCoy, 11 Colo. 591, 19 P. 674. Citing cases from other jurisdictions such as Linder v. Foster, 209 Minn. 43, 295 N.W. 299, and Dunbar v. Greenlaw, 152 Me. 270, 128 A.2d 218, defendants contend that the common law doctrine of judicial immunity should be extended to cover defendants as quasi-judicial officers acting as a medical commission or as expert witnesses called by the district court. We disagree.
Generally, common law principles apply in Colorado only in the absence of statute. See Colorado State Board of Pharmacy v. Hallett, 88 Colo. 331, 296 P. 540. However, the common law does not apply here since proceedings to review the sanity of Murray were initiated pursuant to C.R.S.1963, 39-18-9, and this statute requires that such proceedings be conducted pursuant to Chapter 71. The scope of immunity for persons acting under that chapter is specifically defined by C.R.S.1963, 71-1-24, as follows:
"No person, acting in good faith under any order of court directing that a respondent be . . . held for confinement, examination, diagnosis, observation, or treatment, and not acting in violation or abuse thereof, shall be liable for such action."
Accordingly, we hold that, pursuant to C.R.S.1963, 71-1-24, if defendants acted in good faith and not in "violation or abuse" of the district court's order appointing them as a medical commission, they are immune from plaintiff's claim based upon alleged negligence.
Plaintiff contends that the above cited statute does not grant defendants immunity because it is limited to proceedings initiated to commit an individual to an institution, rather than proceedings initiated to determine whether a person should be released. However, we find no such limitation in the immunity statute. Moreover, the proceedings before the medical commission were, in effect, initiated to determine whether Murray should be committed. Had the medical commission determined that Murray was a mental defective, and had the district court entered an order of commitment, the fact that Murray was eligible for or about to be released on parole from the penitentiary would have had no bearing on the district court's jurisdiction to commit him to a state hospital as a mental defective. See 1965 Perm.Supp., C.R.S.1963, 71-1-11.

II

Validity of Summary Judgment
Plaintiff contends that even if C.R.S. 1963, 71-1-24, grants immunity to defendants, the trial court erred in entering summary judgment because it found that defendants acted in good faith based only upon their affidavits. We agree.
Immunity from suit is an affirmative defense, see Green v. James, 473 F.2d 660 (9th cir.), and was alleged as such in answer to plaintiff's complaint. The affidavit of defendant Rosenbloom, in support of this affirmative defense, merely reflects that a medical commission hearing was held at the Colorado State Hospital, that he personally reviewed the "files and reports" on Murray, and that testimony was taken of Murray, a member of the hospital staff, and an officer of the parole department. The affidavit of defendant Province reflects essentially the same information as the previous affidavit, except Province makes no reference to having interviewed the parole officer, but adds that a guardian ad litem for Murray was present throughout the hearing and that the hearing *629 consumed one and one-half hours, which is "considerably longer than the usual amount of time in such hearings".
Since the issue of whether defendants acted in "good faith" involves their state of mind, resolution of this issue necessarily involves all facts and circumstances of the case as developed not only from direct and circumstantial evidence, but cross-examination of defendants and determinations of credibility made by the trier of facts. See Abrahamsen v. Mountain States Telephone & Telegraph Co., 177 Colo. 422, 494 P.2d 1287; Hatfield v. Barnes, 115 Colo. 30, 168 P.2d 552; Alvado v. General Motors Corp., 229 F.2d 408 (2nd cir.); C. Wright & A. Miller, Federal Practice & Procedure § 2730. Under these circumstances, the question of whether defendants acted in good faith may not be determined on the basis of the affidavits before us, and thus entry of summary judgment was improper. Hatfield v. Barnes, supra.
The judgment is reversed and the cause remanded with directions to reinstate plaintiff's complaint and for further proceedings not inconsistent with the views expressed herein.
ENOCH and PIERCE, JJ., concur.