**GULF INSURANCE COMPANY, a Texas Corporation, Plaintiff-Appellant,**

v.

**The STATE of Colorado; Executive Director of the Colorado Department of Institutions; Director of the Colorado Division of Correction; and Superintendent of Maximum Security—Colorado State Penitentiary, Defendants-Appellees.**

No. 79CA0463.

Colorado Court of Appeals, Division II.

Nov. 29, 1979.

Rehearing Denied Dec. 28, 1979.

Certiorari Denied March 10, 1980.

Wood, Ris & Hames, P. C., Stephen E. Connor, Mark R. Davis, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sp. Asst. Atty. Gen., Sylvia A. Manzanares, Asst. Atty. Gen., Denver, for defendants-appellees.

RULAND, Judge.

On August 19, 1976, a prisoner at the Colorado State Penitentiary brought suit against the defendants (collectively, the State) to recover damages for injuries allegedly sustained at the penitentiary. Gulf Insurance Company appeals from a summary judgment determining that it is obligated to defend against that suit. We affirm in part, reverse in part, and remand the case for further proceedings.

The record reflects that on December 1, 1975, the prisoner notified the state that he was bringing suit for injuries allegedly sustained during an "inmate riot" at the penitentiary. As of that date, the state was insured by Gulf under a comprehensive liability policy, and a notice of the claim was forwarded to Gulf.

Insofar as pertinent here, the prisoner asserted two claims in his complaint. The first claim alleged that negligent supervision of the penitentiary led to a riot which resulted in injuries to the prisoner. In the second claim, the prisoner alleged that after he was injured, the State negligently failed to provide him with prompt and adequate medical care, thus aggravating his injuries.

Gulf investigated the claim and assumed defense of the suit. However, approximately two and one-half years after Gulf received the original notice of claim, and one month prior to the scheduled trial date, Gulf advised the State that its policy did not provide coverage. The State responded, asserting that the policy did cover the incident, and that Gulf's notice was untimely. Gulf then commenced this action for declaratory judgment.

The pertinent policy provisions are: Coverage A (providing Comprehensive General Liability) and Coverage F (concerning Errors or Omission Liability). The insuring agreement and duty to defend clause of Coverage A provides that:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury . . .

*to which this insurance applies,* caused by an *occurrence,* and the company shall have the right and duty to defend any suit against the insured . . .

even if any of the allegations of the suit are groundless, false or fraudulent . . . ." (emphasis supplied)

"Occurrence" as used in Coverage A is defined in this policy as:

"[A]n *event,* or a continuous or repeated exposure to conditions, *which causes bodily injury* or property damage during the policy period that is neither knowingly nor intentionally caused by or at the direction of the insured . . . ." (emphasis supplied)

Coverage F contains substantially the same insuring and duty to defend provisions, but deals with negligent acts or omissions as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay on account of any claim for breach of duty made against the insured by reason of any negligent act, error or omission of the insured . . . ."

After describing the scope of coverage, both provisions list exclusions. Coverage A excludes coverage for:

"(j) . . . bodily injury or property damage arising out of *riot,* civil commotion or mob action or out of any act or omission in connection with the prevention of any of the foregoing . . . ." (emphasis supplied)

And Coverage F provides that:

"The exclusions applicable to Comprehensive General Liability insurance [Coverage] A also apply to this insurance."

The trial court held that the injury sustained by the prisoner arose out of an "occurrence" under Coverage A and that the negligent acts or omissions alleged against the State also brought the claim within Coverage F. Reasoning that a riot is an occurrence, the court determined that the insuring agreement, which covered all bodily injury caused by an occurrence, and the exclusionary clause exempting "riot," were in irreconcilable conflict. It then resolved this conflict against the insurer, and imposed liability.

As an alternative basis for its decision, the trial court interpreted the exclusion to pertain only to civil or public riots and not those occurring in the penitentiary. In support of this interpretation, the trial court relied upon § 18–9–101(2), C.R.S.1973 (1978 Repl. Vol. 8) of the Colorado Criminal Code, which defines a riot as "a *public* disturbance involving . . . five or more persons." (emphasis supplied) We conclude that the policy affords no coverage for the first claim for relief, but that Gulf has a duty to defend against the second claim.

### I. *Coverage*

■ Where the terms of an insurance contract are plain and unambiguous, the court may not rewrite the contract between the parties, nor limit the effect of the contract as written. *Massachusetts Mutual Life Insurance Co. v. DeSalvo,* 174 Colo. 115, 482 P.2d 380 (1971). Further, the provisions of an insurance policy cannot be read in isolation, but must be read as a whole. *Coxen v. Western Empire Life Insurance Co.,* 168 Colo. 444, 452 P.2d 16 (1969). And, when a policy term is not specifically defined by the policy, the word retains its ordinary customary meaning. *Clinger v. United States Fire Insurance Co.,* 32 Colo.App. 52, 506 P.2d 390 (1973).

■ Applying those principles here, we conclude that Coverage A affords general coverage for bodily injury resulting from occurrences "*to which this insurance applies,*" and Coverage F insures against negligent acts. However, the exclusion (which applies to both Coverages A and B) eliminates coverage if the bodily injury arises out of a riot. While a riot is an "occurrence" within the policy definition, it is an occurrence which is excluded from coverage. The popular and usual meaning of the word "riot" is:

"[A] tumultuous disturbance of the peace by three persons or more, assembl[ed] together of their own authority, with an intent mutually to assist one another against any who shall oppose them in the execution of some enterprise of a private nature, and afterwards actu-

ally executing the same in a violent and turbulent manner . . . ." *Spring Garden Insurance Co. v. Imperial Tobacco Co.*, 132 Ky. 7, 116 S.W. 234 (1909); *see also Trujillo v. People*, 116 Colo. 157, 178 P.2d 942 (1947); 11 *G. Couch, Cyclopedia of Insurance Law* § 42:485 (2d ed. R. Anderson 1963). We conclude, therefore, that the policy affords no coverage for bodily injury arising out of a riot whether within or without the walls of the penitentiary.

■ The prisoner's second claim for relief arises out of an occurrence which took place *after* the riot, namely, an alleged omission to provide prompt and adequate medical care. Hence, coverage is afforded the State as to this claim under both Coverages A and F, and Gulf is obligated to defend against that claim.

## II. *Waiver and Estoppel*

■ In support of the judgment, the State asserts that Gulf's conduct in assuming the defense of its action for a period of two and one-half years constituted a waiver of exclusion (j) and that Gulf has now waived and is estopped, as a matter of law, from asserting non-coverage. We conclude that these issues cannot be resolved without presentation of evidence at trial.

Waiver is the intentional and voluntary abandonment of a known right. *Colorado Bank & Trust Co. v. Western Slope Investment, Inc.*, 36 Colo.App. 149, 539 P.2d 501 (1975). Generally, issues relative to a party's intent may not be resolved by summary judgment. *See Brown v. Rosenbloom*, 34 Colo.App. 109, 524 P.2d 626 (1974), *aff'd* 188 Colo. 83, 532 P.2d 948 (1975); *Hatfield v. Barnes*, 115 Colo. 30, 168 P.2d 552 (1946). And, based on the record before us, we are unable to conclude that Gulf intended or consented to relinquish its rights.

In order to establish estoppel, it must appear, *inter alia*, that the State relied upon Gulf's defense of the suit to its detriment. *See First National Bank v. Ulibarri*, 38 Colo.App. 428, 557 P.2d 1221 (1976). However, no presumption of prejudice arises where, as here, the insurer disclaims coverage prior to trial. *Boulet v. Millers Mutual*

*Insurance Ass'n*, 362 F.2d 619 (8th Cir. 1966); *see also Kearns Coal Corp. v. United States Fidelity & Guaranty Co.*, 118 F.2d 33 (2d Cir. 1941), *cert. denied*, 313 U.S. 579, 61 S.Ct. 1099, 85 L.Ed. 1536. Thus, this issue also may not be resolved by summary judgment proceedings.

That part of the judgment determining that Gulf is obligated to defend against the prisoner's second claim for relief is affirmed. That part of the judgment determining that Gulf is obligated to defend against the prisoner's first claim for relief is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

PIERCE and BERMAN, JJ., concur.