The BOARD OF COUNTY COMMISSION-ERS OF the COUNTY OF LARIMER, IN the STATE OF COLORADO, Plaintiff,

v.

GUARANTEE INSURANCE COMPANY, a corporation, Defendant.

Civ. A. No. 80–K–163.

United States District Court, D. Colorado.

June 3, 1981.

George H. Hass, Harden, Schmidt & Hass, Fort Collins, Colo., for plaintiff.

Richard D. Greengard, Scott Gelman, Greengard, Blackman & Senter, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a diversity action by the Board of County Commissioners of Larimer County, Colorado, against Guarantee Insurance Company, a New Jersey corporation with its principal place of business in New Jersey. The case is before the court on cross-motions for summary judgment on the question whether the attorneys fees award in a civil rights action to the plaintiff's attorneys and court costs are covered by the insurance policy. The county also moves for summary judgment on its claim of coverage for its own legal fees and costs. In the alternative, the county claims that Guarantee has waived any defense of non-coverage or is estopped from proferring the defense based upon Guarantee's participation in the defense of the civil rights action.

Between July 1, 1977, and September 1, 1978, Larimer County was insured under Comprehensive Liability Policy No. GA 47882 issued by Guarantee. The county claims that on its behalf Guarantee undertook the defense of federal civil rights action *Price v. Watson*, Civ.No. 78–A–890 (D.Colo.), filed August 28, 1978, and amended on November 3, 1978, to name the county as defendant. The county asserts that through its attorneys, Elliott & Greengard, Guarantee defended this action from approximately October 27, 1978, to August 24, 1979, at which time the county alleges Guarantee abandoned the action. The county seeks recovery of its own attorneys fees and costs in the defense of the *Price* action in the amount of $26,183.17 [1] as well as the attorneys fees in the amount of $26,075 awarded to the *Price* plaintiffs' attorneys pursuant to 42 U.S.C. § 1988 and

---

1. $22,105 of the amount requested in the first claim for relief constitutes the County's expenses between September 26, 1978, and August 24, 1979, and $4,078.17 constitutes expenses in defending the attorneys fees action.

costs in the amount of $596.49 assessed against the county.

Guarantee's attorneys, Elliott & Greengard, entered an appearance in the *Price* action as co-counsel with the Larimer County Attorney on October 30, 1978. Guarantee concedes it both monitored and actively participated in the defense of the action. Only declaratory and injunctive relief were sought in the civil rights complaint although both the county and Guarantee anticipated possible damage claims. The Honorable Alfred A. Arraj, United States District Judge, issued a Consent Judgment and Order in the *Price* case based upon a Stipulation for Entry of Consent Judgment and Order dated October 31, 1979, and filed with the court on November 1, 1979. Damages were never sought nor granted. The plaintiffs in *Price*, however, sought attorneys fees pursuant to 42 U.S.C. § 1988 on November 21, 1979, which were awarded by Judge Arraj on February 29, 1980.

Prior to the claim for attorneys fees Guarantee's attorneys notified the county by letter dated August 14, 1979, their intention to withdraw from the defense of the action. The letter indicated that because no damages were sought there was no coverage under the insurance policy. The attorneys withdrew from the action on August 24, 1979. On November 28, 1979, the Larimer County Attorney notified Guarantee of the attorneys fees claim and tendered the defense of the claim to Guarantee. Guarantee forwarded notification of its refusal to provide a defense by letter dated December 12, 1979, again claiming non-coverage.

## COVERAGE

■ Colorado law requires that where the terms of an insurance contract are plain and unambiguous, a court may not rewrite the contract between the parties, nor limit the effect of the contract as written. *Massachusetts Mutual Life Ins. Co. v. De Salvo*, 174 Colo. 115, 482 P.2d 380 (1971); *Gulf Insurance Co. v. State of Colorado*, 607 P.2d 1016, 1018 (Colo.App.1979). Further, the provision of an insurance policy cannot be read in isolation, but must be read as a whole. *Id. (citing Coxen v. Western Empire Life Ins. Co.*, 168 Colo. 444, 452 P.2d 16 (1969)).

■ The applicable policy provision under Policy No. GA 47832 provides coverage for "personal injury liability" resulting from "[v]iolation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States of America and the States." Coverage P, § I(D). However, the liability provision makes the condition that "[t]he company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as *damages* because of injury...." Coverage P, § I (emphasis added). Under the policy Guarantee is obligated "to defend any suit against the Insured *seeking damages* on account of such personal injury ...," *id.* (emphasis added), and to pay all sums incurred as damages for the violation. *Id.* "Damages" are defined as "only those damages which are payable because of personal injury arising out of an offense to which this insurance applies." Coverage P, § IV Additional Definition. The attorneys fees awarded to the *Price* plaintiffs and costs assessed against the county are not damages as contemplated by the policy definition or as understood by the term's ordinary customary meaning in civil rights actions. Rather, attorneys fees under section 1988 are "costs" of the litigation. 42 U.S.C. § 1988, *Battle v. Anderson*, 614 F.2d 251, 258–59 (10th Cir. 1980).

Under the "Supplementary Payments" provision of the insurance policy, Guarantee is responsible "in addition to the applicable limits of liability" for "all *costs* taxed against the Insured in any suit defended by the company ..." and for "reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit...." Although the provisions under "Supplementary Payments" indicate coverage for the costs of attorneys fees and the county's reasonable expenses, the provisions taken in their entirety extend coverage to

and impose liability upon Guarantee only for damages and costs incurred in civil rights suits seeking monetary damages and not merely injunctive relief. I conclude, therefore, that the personal injury provisions afford neither coverage for the *Price* plaintiffs attorneys fees and costs taxed against the county nor for the county's legal fees and expenses.

■ The county also asserts that the attorneys fees claim is covered under the "Errors or Omissions Liability" provision of the insurance policy. Section 1 of this provision states:

> [t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay on account of any claim for breach of duty made against the insured by reason of any negligent act, error or omission of the insured . . . and the company shall have the right to defend any suit against insured seeking damages on account of such breach of duty. . . .

The *Price* case involved claims that the Larimer County Sheriff breached his duty regarding the plaintiffs' civil rights. At first glance the terms of this provision make Guarantee liable for all sums incurred as the result of "any claim," including one for injunctive relief. Unlike the personal injury provision the errors and omissions language does not limit liability to "all sums which the insured shall become legally obligated to pay as damages. . . ." Coverage P, § I. However, coverage is unavailable because the exclusions section of the errors and omissions provision expressly states "[t]his insurance does not apply: . . . (c) to sums which are payable under Coverages A, B, C, D, or P." A claim pursuant to 42 U.S.C. § 1983 for deprivation of civil rights is articulated in the insurance policy's personal injury provision and subject to its limitations. Taking the language of the errors and omissions provision in its entirety leads to the conclusion that it, too, applies only to damage claims. Therefore, the errors and omissions provision is inapplicable and does not provide coverage for the county's attorneys fees and expenses claims.

**2.** Guarantee contests Wilson's agency status for the insurance carrier.

## WAIVER AND ESTOPPEL

It appears from the briefs, supporting affidavits, and depositions that the initial understanding of the parties was that Guarantee or its attorneys would become involved in some capacity in the defense of the *Price* action because of a potential damage claim and thus potential coverage. However, at some point the understanding became skewed. The parties dispute whether the understanding evolved so that the costs of the litigation would be covered despite the absence of a damage claim. The county offers a letter from Guarantee's insurance representative,[2] L.C. Wilson Agency, dated February 16, 1979, which indicates that although no actual damages were claimed in the *Price* action, "the carrier of the insurance protection is obligated by the insurance contract to provide the costs of legal defense." The county maintains that Guarantee's attorneys, Elliott & Greengard, undertook the defense of the *Price* action without a reservation of rights and thus waived any defense of non-coverage for the costs of the litigation. The county's tendered affidavits and documents support this position. However, Guarantee asserts its attorneys merely monitored the action, albeit through active participation in the defense, because of the strong possibility of a damage claim or the effects of res judicata. Guarantee further claims the county insisted upon its complete control of the litigation. Finally, Guarantee claims it did not waive its rights and that its subsequent withdrawal because of non-coverage was valid. Guarantee's affidavits, depositions, and letters support its position.

■ "Waiver is the intentional and voluntary abandonment of a known right." *Gulf Insurance Co. v. State of Colorado*, 607 P.2d at 1019. At the outset I recognize that there is a question of fact regarding Guarantee's intent which makes summary judgment inappropriate. *Id., Poller v. Columbia Broadcasting, Inc.*, 368 U.S. 464, 82 S.Ct.

486, 7 L.Ed.2d 458 (1962), *Ruskin v. Sunrise Management, Inc.*, 506 F.Supp. 1284, 1289 (D.Colo.1981). Although Guarantee asserted a disclaimer of liability approximately a year after its initial involvement with the *Price* litigation, it made no disclaimer or reservation of rights originally and its express intent is in dispute. · In addition, even absent an express intent not to waive a defense of non-coverage, waiver or estoppel may result by Guarantee's conduct. *General Accident & Life Assur. Corp. v. Mitchell*, 128 Colo. 11, 19, 259 P.2d 862, 868 (1953). Waiver or estoppel do not necessarily result from the entry of an appearance for the insured by the insurer nor from investigation of the case by the insurer for a reasonable period of time. *State Farm Mutual Auto Ins. Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852, 854–855 (1971). However, an insurer's unconditional defense of an action brought against its insured constitutes a waiver. *Pendleton v. Pan American Fire & Casualty Co.*, 317 F.2d 96, 99 (10th Cir.), cert. denied, 375 U.S. 905, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963).

■ In *Pendleton* the Tenth Circuit Court of Appeals indicated that an "unconditional defense" exists where a liability insurance carrier (1) assumes and conducts the defense of an action brought against its insured, (2) with full knowledge of a ground of forfeiture or non-coverage under the policy, and (3) without disclaiming liability or giving notice of a reservation of its right to deny coverage. *Id.* at 99. In *Pendleton* the insurer's attorneys took full control of the litigation and then the insurer refused to pay the judgment after settlement on the grounds of non-coverage. The court held that a waiver applied and the insurer was estopped because of its notice of non-coverage and its failure to disclaim liability or to obtain a non-waiver agreement. *Id.* at 100. *Cf. General Accident & Life Assur. Corp. v. Mitchell*, 128 Colo. at 21, 259 P.2d at 868 (no

waiver or estoppel where although insurer defended at trial, it had obtained non-waiver agreement).

■ Here there is a factual dispute regarding the degree of control of the *Price* defense between the respective parties. Nonetheless, Guarantee knew of non-coverage under the policy absent a damage claim against the county.[3] Guarantee did disclaim its liability prior to trial or settlement or the entry of the stipulated consent decree. The question remains whether this disclaimer was timely enough given the degree of its involvement in the defense so as to preclude any prejudice to the county. *State Farm Mutual Auto Ins. Co. v. Kay*, 26 Utah 2d at 199, 487 P.2d at 855. If Guarantee controlled the litigation and the disclaimer was not timely, a presumption of prejudice arises and the county need not prove that it relied to its detriment upon Guarantee's defense of the *Price* action. *Pendleton v. Pan American Fire & Casualty Co.*, 317 F.2d at 99; *Hartford Accident & Indemnity Co. v. Sanford*, 344 F.Supp. 969, 972 (W.D.Okla.1972); *State Farm Mutual Auto Ins. Co. v. Kay*, 487 P.2d at 855. Timeliness equates with disclaimer or withdrawal before trial or settlement. *Id. See also Hartford Accident & Indemnity Co. v. Sanford*, 344 F.Supp. at 972, *Gulf Insurance Co. v. State of Colorado*, 607 P.2d at 1019. However, where the insurer makes a timely notice of its disclaimer and the grounds therefore, there is no presumption of prejudice and the injured must carry its burden of showing reliance to its detriment before estoppel can bar a defense of non-coverage. *Hartford Accident & Indemnity Co. v. Sanford*, 344 F.Supp. at 972, *Gulf Insurance Co. v. State of Colorado*, 607 P.2d at 1019, *State Farm Mutual Auto Ins. Co. v. Kay*, 487 P.2d at 855. "The test in such a case is whether the insured is left an adequate opportunity to defend, and mere delay in making a disclaimer is not enough." *Id. (citing Bou-*

---

**3.** I note that the duty to defend is usually determined at the beginning of litigation by a comparison of the coverage afforded by the policy with the allegations of the complaint. *Pendleton v. Pan American Fire & Casualty Co.*, 317 F.2d at 100. Of course, the duty may attach at

a later stage if the issues change so as to come within the policy coverage. *Id.* As in *Pendleton*, Guarantee as the insurer was under no duty to defend the *Price* action originally although it was prudent to become involved in case the duty later arose.

*let v. Millers Mutual Insurance Ass'n of Illinois*, 362 F.2d 619, 622–623 (8th Cir. 1966)). Prejudice is likely to occur under certain circumstances, including:

> withdrawal from the defense of the action when the liability case has reached the ready calendar resulting in . . . inadequate time to prepare a defense; lack of reasonable opportunity to negotiate a settlement because of the ready status of the case; and lack of a reasonable opportunity to gather and preserve evidence and to institute certain pretrial procedures.

*State Farm Mutual Auto Ins. Co. v. Kay*, 487 P.2d at 855 (*citing Callahan v. American Motorists Ins. Co.*, 56 Misc.2d 734, 289 N.Y.S.2d 1005, 1009–1010 (1968)).

Like the issue of Guarantee's intention to waive its defense, the issue of estoppel is also inappropriate for summary disposition because of disputed facts regarding the control of the litigation, the timeliness of a disclaimer, and possible prejudice to the county. *See Gulf Insurance Co. v. State of Colorado*, 607 P.2d at 1019. It is axiomatic that summary judgment is inappropriate where genuine issues of material fact exist. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–159, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970), *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1383 (10th Cir. 1980). The affidavits, depositions, and supporting materials tendered by the respective parties are conflicting and inconsistent. Where different inferences can be drawn from conflicting affidavits, depositions, and pleadings, I cannot grant summary judgment. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1309 (10th Cir. 1980). Therefore, plaintiffs motion for summary judgment on the grounds of waiver or estoppel is denied. These issues must be resolved by trial. It is therefore

ORDERED that on the issue of coverage, judgment is granted for Guarantee and against the county. It is further

ORDERED that the county's motion for summary judgment on the issues of waiver and estoppel is denied as inappropriate for summary disposition.