**JARDEL ENTERPRISES, INC., a Colorado corporation, Carlos De La Rosa, and Lawrence E. Jaro, Plaintiffs–Appellants,**

v.

**TRICONSULTANTS, INC., a Colorado corporation; James V. Laraby; James W. Rogers; and James R. Busse, Defendants–Appellees.**

No. 86CA0449.

Colorado Court of Appeals, Div. III.

Oct. 13, 1988.

Rehearing Denied Nov. 25, 1988.

Certiorari Denied March 13, 1989.

Carroll, Bradley & Froede, P.C., John S. Carroll, Joan W. Froede, Westminster, for plaintiffs-appellants.

Holt and Gebow, Thomas E. Gebow, Terrence P. Murray, Denver, for defendants-appellees.

TURSI, Judge.

Plaintiffs, Jardel Enterprises, Inc., Carlos De La Rosa, and Lawrence E. Jaro, (owners) appeal the summary judgment entered in favor of defendants, Tri–Consultants, Inc., James V. Laraby, James W. Rogers, and James R. Busse (subcontractors). We affirm.

To consider the propriety of the summary judgment entered, we must view the record in the light most favorable to the plaintiffs. *Zalnis v. Thoroughbred Datsun Car Co.*, 645 P.2d 292 (Colo.App.1982).

When so viewed, the record reveals the following. The owners contracted with Brooks Western Builders, Inc., (contractor) to build a fast-food restaurant. The contract included a liquidated damages provision which provided that for each day completion was delayed, the contractor would pay the owner $100 as the reasonable estimate of the owners' loss of profit.

The contractor subcontracted with the subcontractors to stake out the foundation corners and boundary lines. The subcontractors sent an unlicensed surveyor to complete the work. He misread the building plans; consequently, the building foundation was poured 20 feet too far north. This precluded an efficient drive-through lane and parking spaces in front of the restaurant.

The owners required the contractor to remove the foundation and rebuild it in the correct location resulting in a 65–day delay in opening the restaurant. The owners received $6,500 from the contractor pursuant to the liquidated damages provision.

The contractor brought an action against the subcontractors alleging they negligently staked the restaurant foundation thereby breaching their contract. That action was settled by the subcontractors' payment of $25,000 to the contractor. In exchange, the contractor released and discharged any and all causes of actions and claims against the subcontractors arising from the services the subcontractors provided to the contractor on the restaurant. The owners were not a party to that action or settlement.

Subsequently, the owners brought this action against the subcontractors alleging claims for breach of contract and negligence and sought lost profit damages caused by the delayed opening of the restaurant. The subcontractors moved for summary judgment contending that the settlement agreement and release between the contractor and the subcontractors was a valid defense to any claims made by the owners as third-party beneficiaries of the subcontract.

The trial court entered summary judgment in favor of the subcontractors. It concluded that the general release entered into between the contractor and the sub-

contractor was an effective bar against the owners' action against the subcontractor as a third-party beneficiary of the contractor-subcontractor agreement. It determined that the owners' breach of contract and negligence claims were barred.

## I

■ The owners assert the settlement agreement and release entered by the contractor and the subcontractors did not affect their right to bring this action as the third-party beneficiaries of the breached subcontract. We disagree.

A person not a party to an express contract may bring an action on the contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claimed is a direct and not merely an incidental benefit of the contract. *E.B. Roberts Construction Co. v. Concrete Contractors, Inc.,* 704 P.2d 859 (Colo.1985). However, if the third person is a creditor beneficiary, *i.e.,* if performance of the contract satisfies an actual duty owed by one of the parties to the beneficiary, then the beneficiary's right pursuant to the contract is purely derivative of the right of the contract promisee. 2 S. Williston, *Contracts* §§ 356 and 397 (W. Jaeger 3rd ed. 1959).

In such circumstances, the creditor beneficiary may assert contract rights equal to but not greater than the rights of the contract promisee. The parties to the contract retain the power to discharge or modify the contractual duty to the intended beneficiary unless (1) a term of the contract provides otherwise or (2) the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of either of the parties to the contract. Restatement (Second) of Contracts § 311 (1981).

Here, it is undisputed that the owners were intended creditor beneficiaries of the subcontract since the contractor owed the owners the duty to stake the foundation corners. It is also undisputed that the contractor discharged the contractual duty before the owners brought suit on it. Nevertheless, the owners maintain that they significantly altered their position in reliance on the subcontract. However, each "change of position" they assert was part of the normal progression on the restaurant project and was not related to reliance on the subcontract.

Therefore, the subcontractors and the contractor retained the power to discharge the duty to the owners. The trial court correctly concluded that the settlement agreement and release between the subcontractors and the contractor barred the owners' derivative breach of contract claim.

## II

■ The owners also contend that the trial court erred by determining that the settlement agreement and release barred their negligence claim against the subcontractors. While we agree that the settlement agreement and release did not bar any claim by the owner except the derivative breach of contract claim, we conclude that the owners did not have a negligence claim against the subcontractors. A correct judgment will not be disturbed on review even though the reason for the decision may be wrong. *Miller v. Mountain Valley Ambulance Service, Inc.,* 694 P.2d 362 (Colo.App.1984).

As a general rule, no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty. *Flintkote Co. v. Dravo Corp.,* 678 F.2d 942 (11th Cir.1982); *Album Graphics, Inc. v. Beatrice Foods Co.,* 87 Ill.App.3d 338, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1980). This economic loss rule prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract. *Flintkote Co. v. Dravo Corp., supra.*

■ When parties dealing at arms length enter into a contract, they may

shape the terms of the contract as they please and restrict the remedies for breach of the contract. However, in a negligence action one may seek damages for all injuries proximately caused by the defendant's negligence. Therefore, where only economic losses are incurred by breach of a contractual duty, we reject the assertion that the non-breaching party has a negligence cause of action because to hold otherwise would permit that party to avoid the contractual limitation of remedy. *See Album Graphics, Inc. v. Beatrice Foods Co.,* *supra.* A claim for economic loss on a contract should not be translatable into a tort action in order to escape some roadblock to recovery on a contract theory. W. Prosser & W. Keeton, *Torts* § 92 (5th ed. 1984).

■ This economic loss rule applies whether the plaintiff is a party to the contract or a third-party beneficiary of the contract since the duty the contract promisor owed and breached was determined by the manifested intentions of the parties to the contract and is entirely contractual. W. Prosser & W. Keeton, *supra.*

> "Thus, a builder or a contractor would normally be subject to liability on a contract theory only to the promisee and a third-party beneficiary for delays in construction or defects in construction that do not result in physical harm to persons and tangible things, other than the thing itself that is being constructed or repaired."

W. Prosser & W. Keeton, *supra.*

■ The rule is limited to cases that involve only economic loss and does not prevent a negligence action to recover for physical injury to property or persons because, in that case, the duty breached generally arises independent of the contract. *Flintkote Co. v. Dravo Corp., supra.* There is a general rule of tort law that one who acts is under a duty to exercise reasonable care to avoid physical harm to persons and tangible property of others and this general duty extends to parties to contracts. W. Prosser & W. Keeton, *supra.*

The distinction between a contract and tort claim depends upon the nature of the duty that has been breached, which in most instances can be determined from the harm suffered. *Flintkote Co. v. Dravo Corp., supra.*

Here, the owners sought lost profits, which are purely economic damages, with no claim of physical harm to person or property. Furthermore, the only duty they maintain the subcontractors breached was their contractual duty to perform surveying services. Consequently, owners have no negligence cause of action since no duty independent of the contract was breached.

This case is distinguishable from the cases relied on by the owners. *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980) involved property damage; *Wright v. Creative Corp.,* 30 Colo. App. 575, 498 P.2d 1179 (1972) involved personal injury; and *Iverson v. Solsbery,* 641 P.2d 314 (Colo.App.1982) involved an intentional tort, not negligence.

The owners also cite *Kellogg v. Pizza Oven, Inc.,* 157 Colo. 295, 402 P.2d 633 (1965) and assert that both a contract and tort action may arise separately in the context of construction of a building. While *Kellogg* is similar to this case in that only economic damages were sought for negligent performance of a construction contract, it is distinguishable from this case because it falls within an exception to the general economic loss rule.

One who, in the course of his profession or employment, supplies false information for the guidance of others in their business transactions, is subject to liability for the pecuniary loss caused to them by their justifiable reliance upon the information, if he is negligent in obtaining or communicating the information. Restatement (Second) of Torts § 552 (1977). Professionals, such as attorneys and accountants, who communicate representations with the knowledge that the information is to be relied on by others may be subject to both tort and contract liability for economic loss if third

parties rely on their negligent misrepresentations made in the course of rendering a service pursuant to a contract. W. Prosser & W. Keeton, *Torts* §§ 92 and 107 (5th ed. 1984).

In *Kellogg*, defendants, who were architects, made negligent misrepresentations regarding the cost to build a building; therefore, they were held liable in negligence for the economic damages of the plaintiff. The case before us does not involve negligent misrepresentation of information and, therefore, does not fall within this exception to the general rule.

JUDGMENT AFFIRMED.

KELLY, C.J., and JONES, J., concur.