**SCOTT COMPANY OF CALIFORNIA, Plaintiff-Appellee and Cross-Appellant,**

v.

**MK-FERGUSON COMPANY and Anheuser-Busch, Inc., Defendants-Appellants and Cross-Appellees.**

**No. 90CA1100.**

Colorado Court of Appeals, Div. IV.

Nov. 21, 1991.

Rehearing Denied Jan. 16, 1992.

Certiorari Denied June 29, 1992.

Fairfield and Woods, P.C., Daniel R. Frost and John M. Tanner, Denver, for plaintiff-appellee and cross-appellant.

Gorsuch, Kirgis, Campbell, Walker and Grover, James A. Jablonski and Gary L. Brown, Denver, for defendants-appellants and cross-appellees.

Opinion by Judge MARQUEZ.

Defendants, MK–Ferguson Company and Anheuser–Busch, Inc., appeal from a judgment entered on jury verdicts in favor of plaintiff, Scott Company of California, on its claims of breach of contract, goods sold and delivered and services rendered, promissory estoppel, negligence, and negligent misrepresentation. Plaintiff cross-appeals from the court's dismissal of its punitive damage claim. We reverse and remand for a new trial.

Plaintiff, a mechanical subcontractor, entered into two contracts with defendant MK–Ferguson Company, the general contractor, for the performance of process piping work for a brewery being constructed by defendants and owner Anheuser–Busch in Fort Collins, Colorado.

According to plaintiff, after beginning work on the project, it encountered a number of problems including frequent and significant changes in drawings from which it was to work and final drawings that were of extremely poor quality and contained significant errors. Plaintiff further contends that, as a result of these problems, it was unable to fabricate off the job site, that hundreds of extra welds were required, that it fell substantially behind schedule, that it was required to accelerate and add more employees, supervision, and equipment to meet the scheduled completion date, and that the scope of its undertaking was significantly changed.

Although plaintiff completed its work and was paid approximately $5.5 million, including some additional compensation, but not including retainage, defendants denied plaintiff's claim for further compensation.

Plaintiff eventually brought suit alleging a variety of claims. However, only its claims of breach of contract, promissory estoppel, services performed and goods sold and delivered, negligence, and negligent misrepresentation, went to the jury. Plaintiff sought to recover retainage due under the two contracts, additional compensation under the changes clause of the contracts, and other damages it alleged were caused by certain breaches of the contracts by MK–Ferguson. It also sought the same damages under the remaining claims.

The jury returned verdicts in favor of plaintiff on all claims and assessed $1,525,283 in damages. While the damages awarded were apparently for the breach of contract, services performed and goods sold and delivered, and promissory estoppel claims, the verdict form did not specify to which claims the damages were allocated. No further damages were awarded pursuant to the negligence claims.

I.

Defendants now argue that the court erred in allowing plaintiff to pursue claims on the basis of breach of contract and also to pursue claims under theories of constructive or quasi-contract, promissory estoppel, negligence, and negligent misrepresentation. We agree.

 Plaintiff's claim for goods sold and delivered and services rendered is essentially an implied contract, *quantum meruit* claim. If an express contract exists and an asserted implied contract is alleged to co-exist and relate to the same subject matter, there can be no implied contract between the parties because the provisions of the express contract supersede those of the implied contract; however, this rule does not apply if the implied agreement is based upon the conduct of the parties subsequent to, and not covered by, the terms of the express contract. *Schuck Corp. v. Sorkowitz*, 686 P.2d 1366 (Colo.App.1984); see *In re Estate of Murphy*, 110 Colo. 304, 134 P.2d 199 (1943).

 *Quantum meruit* is an appropriate basis for recovery when substantial changes occur which are not covered by the contract and are not within the contempla-

tion of the parties and the effect of such changes is to require extra work or to cause substantial loss to the contractor. *Hensel Phelps Construction Co. v. King County*, 57 Wash.App. 170, 787 P.2d 58 (1990).

■ Whether a subcontractor can recover under a *quantum meruit* or unjust enrichment theory in a case such as this is a mixed question of law and fact. *Hensel Phelps Construction Co. v. King County, supra.*

■ Also, promissory estoppel is applicable only in the absence of an otherwise enforceable contract. *Gilmore v. Ute City Mortgage Co.*, 660 F.Supp. 437 (D.Colo. 1986). The alternative remedy of promissory estoppel is never reached when there has been mutual agreement by the parties on all essential terms of a contract. *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900 (Colo.1982).

■ Further, as a general rule, no cause of action lies in tort when purely economic damage, with no physical injury to property or persons, is caused by negligent breach of a contractual duty. *Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301 (Colo.App.1988).

■ Interpretation of a written contract and whether such a contract is ambiguous are questions of law for the court, *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984), and the reviewing court is not bound by the trial court's findings or conclusions as to those issues. *Barnes v. Van Schaack Mortgage*, 787 P.2d 207 (Colo.App.1990).

The first step in the analysis is for the trial court to decide whether the contract contains any ambiguity from which a trier of fact could reasonably find that the damages or changed conditions were contingencies not contemplated by the parties. If, by looking within the four corners of the document, the court can determine that the written contract unambiguously contemplates the changes or disruptions experienced by the complaining party, no issue of fact exists and the claims, other then those based on the express contract, must be dismissed. If, on the other hand, the provisions are ambiguous, issues of fact would exist, and the resolution of the question would be for the trier of fact. *Hensel Phelps Construction Co. v. King County, supra.*

The focus of the inquiry should be whether the types of changes were covered by the contract, not the degree of variation in job conditions from what was originally relied upon in the bid. *Hensel Phelps Construction Co. v. King County, supra.*

Plaintiff's Third Amended Complaint alleged a claim for breach of an oral contract based on allegations, contained in the breach of contract claim, that defendants' agents and representatives assured plaintiff that it would be adequately compensated for all costs incurred as a result of defendants' acceleration of the work and that such acceleration was absolutely necessary to keep the project on schedule.

Plaintiff alternatively alleged claims for unjust enrichment and for services performed and goods sold and delivered based on labor, materials, and other effort expended by plaintiff under the oral contract. Plaintiff also alleged a claim in the alternative for promissory estoppel on grounds that defendants' assurances that plaintiff would be adequately compensated for all costs incurred as a result of the acceleration induced action on the part of plaintiff.

In addition, plaintiff asserted a claim for negligence based on the same allegations in the breach of contract claim and a claim for negligent misrepresentation based on the alleged erroneous and inaccurate information received pertaining to the drawings.

The court eventually dismissed the oral contract and unjust enrichment claims. Plaintiff does not appeal the dismissal of the oral contract claim and has apparently confined its cross-appeal to the trial court's failure to allow plaintiff's claim for punitive damages to be submitted to the jury.

■ Here, plaintiff does not contend that there were no enforceable express contracts. Therefore, the question is whether substantial changes occurred that were not covered by the contracts and were not

within the contemplation of the parties, *see Schuck Corp. v. Sorkowitz, supra; Hensel Phelps Construction Co. v. King County, supra,* and whether defendants breached duties that were not contractual duties. *See Jardel Enterprises, Inc. v. Triconsultants, Inc., supra.*

However, we find no ambiguity in the terms of the contracts sufficient to make the question one for the jury. Specifically, plaintiff claims that it was forced to make changes in the scope of its work and to accelerate its performance, thus resulting in uncompensated labor and other cost overruns, upon defendants' assurance that plaintiff would be adequately compensated. These allegations involve contingencies clearly covered by the subcontracts.

Paragraph 4 of the subcontracts, "Measurements" provides that:

Constructor shall not scale drawings for working dimensions. Constructor shall verify in the field all reference measurements or other dimensions designated to be field verified before ordering materials or doing work.

Paragraph 5 of the subcontracts, "Omissions," provides in part:

Anything mentioned in the specifications and not indicated on the drawings, or indicated on the drawings and not mentioned in the specifications, shall be done as if indicated or mentioned in both. Further, anything customarily necessary for proper completion of the work shall be furnished and installed although not shown on the drawings or mentioned in the specifications.

Paragraph 6 of the subcontracts, "Discrepancies," states:

Errors, conflicts, ambiguities, or inconsistencies in the drawings, specifications or other documents shall be immediately brought to Ferguson's attention. Constructor shall not proceed with the work in question until Ferguson furnishes a clarification or correction of the matter. In the event Constructor proceeds before resolution by Ferguson, Constructor shall be responsible for any excess costs or damages resulting from its failure to seek and obtain resolution.

Paragraph 12 of the subcontracts, "Time of Completion," provides in part:

It is recognized that revisions in the planned schedule are inherent in the nature of construction. This may result in revision of constructor's scheduled work during the progress of construction.

Paragraph 14, "Overtime Work," provides in part:

Ferguson may, at any time during the performance of the work, direct Constructor to work overtime hours, including Saturdays, Sundays, holidays, or additional shifts. Constructor will be paid for the *actual* additional premium costs of this overtime of shift work when performed in accordance with Ferguson's written instructions....

If Ferguson determines that the work has not proceeded in accordance with the schedule or that the rate of progress by Constructor is inadequate to meet scheduled completion dates, Ferguson may direct Constructor to work extra shifts or overtime or to add personnel or equipment at no additional cost to Ferguson and Constructor shall immediately comply.

Also, paragraph 23, "Changes," provides:

Ferguson may order changes in the work and these changes shall be performed by Constructor if Constructor is directed to proceed. Such changes may only be directed by written instruction. Transmittals of additional or revised drawings or specifications, revised schedules or similar information, data or documents shall constitute a written instruction.

It shall be the responsibility of the Constructor to submit a written response in a timely manner to each instruction or transmittal it receives, irrespective of whether the instruction or transmittal constitutes an increase, a decrease or does not change the scope of work, price or schedule.

If Constructor determines that an instruction or transmittal changes its scope of price or schedule, it shall submit a proposal for performing the change and shall not proceed with the change with-

out Ferguson's approval of its proposal or written instructions to proceed. Constructor's proposal must be supported by a detailed breakdown showing manhours, quantities, units, and similar details clearly showing how the estimated costs, if any, were determined. If Constructor proceeds without notice, or without Ferguson's approval of its proposal or written instructions to proceed, it shall be deemed that the instruction does not constitute a change to Constructor's scope, price or schedule. In this event, Constructor will be conclusively barred from seeking extra payment at a later date. Upon approval of Constructor's proposal, a Change Order to the Agreement will be issued. The Change Order price shall include all costs for the change, including the impact, if any, upon the unchanged work. All changed work will be performed within the original schedule unless stated otherwise in the Change Order.

If Constructor claims extra compensation and Ferguson disputes the claim, in part or in whole, Ferguson may instruct Constructor to proceed under protest to ensure timely completion of the work and Constructor shall comply.

In the event Ferguson acknowledges that the instruction or notification constitutes a change to the scope of Constructor's work, but agreement cannot be reached relative to an equitable price adjustment, Ferguson may direct that Constructor perform the work on a Cost Plus basis. In this event, Constructor shall keep an accurate record of labor and materials, submitted daily to Ferguson and supported by time sheets, invoices and other documentation reasonably requested by Ferguson. Constructor has the burden of accurately substantiating all costs in a clear and precise manner. Constructor shall be limited to a combined overhead and profit mark-up of fifteen percent (15%) for work performed on a Cost Plus basis.

All additional or changed work, whether performed before or after the Change Order is finalized, shall be performed under the Terms and Conditions of these contract documents except as specifically modified by the Change Order.

These provisions are unambiguous and cover the issues of errors in the drawings, acceleration of performance, and compensation of plaintiff for additional cost. Hence, these issues were contemplated by the parties, and therefore, the court erred in allowing plaintiff to proceed on theories of goods sold and delivered and services performed and promissory estoppel. *See Hensel Phelps Construction Co. v. King County, supra.*

■ Also, the court erred in allowing the negligence claims to go to the jury since no duties independent of contractual duties were alleged to have been breached. *See Jardel Enterprises, Inc. v. Triconsultants, Inc., supra.*

Furthermore, it does not appear that plaintiff claimed that damages for goods sold and delivered and services performed, promissory estoppel, or negligence and negligent misrepresentation were based on conduct not covered by the contracts. This is made clear by the jury instruction which states that plaintiff "sued for the *same injuries, damages, and losses* on five different claims for relief," including breach of contract, promissory estoppel, services performed and goods sold and delivered, as well as the negligence claims. (emphasis added)

Plaintiff nevertheless contends that the implied contract and promissory estoppel claims were not alternative claims to the breach of contract claim or to each other, but were separate claims based on separate conduct above and beyond the coverage of the contracts.

Here, plaintiff's contention is inconsistent with the allegations of its complaint in which the claims for promissory estoppel and for services performed and goods sold and delivered were set forth as claims "in the alternative." At trial, plaintiff did not explain in statements or argument or during presentation of evidence what work it claimed was separate from the written contract. Nor was the jury instructed that plaintiff's other claims were separate from

the express contract claim and based on separate conduct above and beyond the coverage of the contracts.

■ We are also unable to conclude that any error in submitting claims other than the express contract claims was harmless. The measure of damages applicable to each theory was different, and, under the evidence presented, we are unable to determine whether the jury properly applied the trial court's instructions in order to arrive at its verdict on the contract claims.

Therefore, since any change of verdict would be a change of substance not of form, *see Boulder Valley School District R–2 v. Price*, 805 P.2d 1085 (Colo.1991), the case must be remanded for a new trial.

## II.

### A.

■ Because the issue may arise on remand, we address defendants' contention that the court erred in admitting into evidence a document entitled "Settlement Detail" in violation of CRE 408. We disagree.

CRE 408 provides in part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

■ The threshold question is whether the conduct or statements were made in settlement negotiations, for if they were not, the rule is inapplicable. This question is one of fact for the trial court. *Aaron v. Marcove*, 685 P.2d 268 (Colo.App.1985). *See H & H Distributors, Inc. v. BBC International, Inc.*, 812 P.2d 659 (Colo.App. 1990).

Here, the court found that the document was admissible because it was a status report prepared for defendants' use in the ordinary course of business, not for the purpose of discussing settlement with plaintiff. Since the evidence supports this finding, we are bound by the court's ruling. *See Aaron v. Marcove, supra.*

### B.

■ We also address defendants' contention that the court erred in admitting into evidence, in violation of CRE 408, statements by plaintiff that a representative of defendants stated that he felt plaintiff's claims had merit in the amount of $623,000. Again, we disagree.

The court overruled defendants' objection to the testimony. Further, the court stated that situations in which someone acknowledges that a certain claim is valid or is valid to a certain extent, or statements to the effect: "I think your claim is worth 'X' number of dollars," are not offers within the meaning of CRE 408.

The court's ruling is supported by the evidence.

### III.

Plaintiff cross-appeals contending that the court erred in not allowing its punitive damage claim to be submitted to the jury. Since the action must be retried, we do not address this contention except to say that, under the evidence then before the trial court, we find no error in its conclusion that there was not a sufficient basis to support an award of punitive damages. *See Tri–Aspen Construction Co. v. Johnson*, 714 P.2d 484 (Colo.1986).

The judgment is reversed, and the cause is remanded for a new trial in accordance with our opinion.

PLANK and HUME, JJ., concur.