COMMERCIAL UNION INSURANCE COMPANY and American Employers' Insurance Company, Plaintiffs,

v.

ROXBOROUGH VILLAGE JOINT VENTURE, Roxborough Acquisitions Corporation, and Pulte Home Corporation, Defendants.

Civil Action No. 92–K–628.

United States District Court,
D. Colorado.

Nov. 7, 1996.

Michael L. Poindexter, Byrne, Kiely & White, Denver, CO, Christopher M. Bechhold, Thompson, Hine and Flory, Cincinnati, OH, for Plaintiffs.

John L. Breit, Bradley A. Levin, Breit, Bosch, Levin & Coppola, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Six motions and cross-motions for summary judgment are pending in this insurance litigation. I deny each one.

### I. *FACTS AND PROCEDURAL HISTORY.*

This is an insurance coverage and bad faith action involving a series of comprehensive general liability and umbrella policies issued by Plaintiffs Commercial Union Insurance Company and American Employer's Insurance Company (collectively, "Commercial Union") to Defendants Roxborough Village Joint Venture (RVJV) and Roxborough Acquisition Corporation (RAC) (collectively, "Roxborough") in 1986, 1987 and 1988. The dispute arises from claims filed by Defendant Pulte Home Corporation ("Pulte") against Roxborough in Colorado State Court in 1990, *Pulte Home Corp. v. Roxborough Village Joint Venture, et al.,* Civil Action No. 90–CV–2085, District Court, City and County of Denver, Colorado (the "Underlying Case").

The claims against Roxborough in the Underlying Case arose from the sale and purchase of real property located in the Roxborough Village subdivision in Douglas County, Colorado (the "Property"), and damage to homes Pulte later built on the Property. RVJV, as the owner and developer of the Property, entered into a Real Estate Option Agreement with Pulte to purchase finished lots located in Roxborough Village in November 1985. Pursuant to this Agreement, RVJV hired subcontractors to grade the lots, install sewer lines, water lines, and an underdrain, and to construct the streets, curbs, and sidewalks in the subdivision. Pulte bought the finished lots from RVJV and built 180 homes on them between April 1986 and the Spring of 1988.

In the Fall of 1988, Pulte began receiving complaints and service requests about foundation cracks and other structural problems in the homes. According to Pulte's experts, the problem occurred when water infiltrated the Property through naturally occurring lenses or channels that ran underneath the subdivision and expanded the soil in which the foundations were set. The water, Pulte claimed, leaked from a man-made pond on the Property as well as from the underground utilities and drainage systems negligently installed by RVJV.

During the following three years, Pulte spent over $5.7 million to repair the homes, and anticipated spending an additional $4.5 million to solve the problems and conduct additional repairs.

After receiving the Complaint and Summons in the Underlying case, Roxborough notified Commercial Union of Pulte's claims. In April 1990, Commercial Union tendered a defense under the Policies but, in a series of four letters, reserved its right to contest coverage at a later date. Discovery proceeded during the ensuing two years and the case was prepared for trial.

At a settlement conference in February 1992, Pulte's demand was in excess of $11,000,000. On March 9, 1992, Roxborough sent Commercial Union a letter demanding that it make a settlement offer to Pulte up to and including applicable policy limits.

On April 2, 1992—four days before trial in the Underlying Case was set to commence—Commercial Union representative Peter Minnar wrote to Roxborough's counsel William Brennan. Making reference to certain provisions in the policies, Minnar stated there was no coverage for the claims in the Underlying Case and that Commercial Union would seek reimbursement for its defense costs. Minnar advised Brennan that Commercial Union was filing a declaratory judgment action in federal court that same day to determine the coverage issues, and enclosed a copy of the Complaint. At the same time, Commercial Union continued to defend Roxborough in the Underlying Case, which had begun trial.

After two days of jury selection and opening statements, Roxborough and Pulte reached a settlement in principle for approximately $6,000,000. Before finalizing the settlement, Roxborough advised Commercial Union of the proposed agreement and gave it an opportunity to resolve the matter with Pulte. Commercial Union took no action,

and Pulte and Roxborough entered into a Stipulation of Judgment.[1]

Commercial Union filed its original Complaint for Declaratory Relief in this action on April 2, 1992, disclaiming any obligation to defend Roxborough with respect to the claims in the Underlying Case or to indemnify it for any settlement with Pulte. In its First Amended Complaint, Commercial Union included Pulte as a defendant, and added claims stating further bases under the policies for non-coverage.

Roxborough filed its Counterclaim, asserting Commercial Union was obligated to indemnify it for the Pulte settlement and that Commercial Union's actions throughout the pendency of the Underlying Case reflected an ongoing course of bad faith conduct. Roxborough sought compensatory and exemplary damages, attorney fees, interest, and costs based on theories of breach of contract, negligence, breach of the covenant of good faith and fair dealing, breach of fiduciary duties, and estoppel.

Chief Judge Matsch denied an initial round of motions and cross-motions for summary judgment from the bench on November 18, 1993. He ordered the trial in this case bifurcated, with the breach of contract/coverage issues being decided first and the bad faith and extra-contractual claims, if any, being decided afterwards. Chief Judge Matsch also allowed the parties to submit additional summary judgment motions on discreet issues, which motions are now pending. The case has since been transferred to me.

The following motions are determined:

(1) Plaintiff's Motion for Summary Judgment Due to Absence of Viable Non–Contractual Claims Against Insured (filed February 18, 1994);

(2) Plaintiff's Motion for Partial Summary Judgment Regarding Policies Under Which Coverage May Exist (filed February 18, 1994);

(3) Defendant's Second Motion for Partial Summary Judgment (filed August 22, 1994);

(4) Defendant's Second Supplemental Motion for Partial Summary Judgment (filed September 2, 1994);

(5) Plaintiff's Motion for Partial Summary Judgment (estoppel claim) (filed August 22, 1994); and

(6) Defendant's Renewed Cross–Motion for Partial Summary Judgment (estoppel claim) (filed October 4, 1994).

## II. DISCUSSION.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits on file show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The facts presented, and appropriate inferences that may be drawn from them, must be construed in the light most favorable to the nonmoving party. *Id.*

Summary judgment is proper only if it appears that a reasonable trier of fact could not return a verdict for the nonmoving party. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

A. *Plaintiff's Motion for Summary Judgment Due to Absence of Viable Non–Contractual Claims Against Insured.*

1. *The Parties' Arguments.*

Commercial Union contends it owes no indemnification duty to Roxborough for the

1. Pursuant to the stipulation, Roxborough agreed to pay $25,000 to Pulte to compensate Pulte for its expert witness fees. While Roxborough stipulated to a $6,000,000 judgment in Pulte's favor, Pulte agreed not to enforce the judgment against Roxborough. Instead, Pulte agreed to manage the defense of the declaratory judgment action in federal court. Roxborough agreed to file a counterclaim against Commercial Union in the federal action, with any recovery on that counterclaim to be distributed as follows: (1) Roxborough would first be reimbursed the $25,000 payment to Pulte; (2) Pulte would receive the $6,000,000 judgment; (3) Roxborough would receive any additional compensatory damages; and (4) any punitive damages would be divided 50% to Roxborough and 50% to Pulte.

settlement of Pulte's claims in the Underlying Case because, as a matter of law, Pulte's claims sounded solely in contract for which there was no coverage under the Policies. In the alternative, Commercial Union claims it is entitled to judgment because the Policies provide coverage only for property damage or personal injury suffered by a plaintiff in an action against the insured, and Pulte suffered no such injury.

■ Commercial Union relies on the "economic loss rule" to argue Pulte had no viable noncontractual claims against Roxborough in the Underlying Case. The rule prohibits the translation of a claim for economic loss on a contract into a claim sounding in tort in order to escape some roadblock to recovery on a contract theory. *Jardel Enter., Inc. v. Triconsultants, Inc.,* 770 P.2d 1301 (Colo. App.1988), *cert. denied* (Mar. 13, 1989) (citing W. Prosser & W. Keeton, Torts § 92 (5th ed. 1984)). Contending Pulte sued Roxborough because its profits were below expectations rather than because it had suffered any personal injury or property damage, Commercial Union argues Pulte's losses in the Underlying Case were recoverable solely in contract.

■ Roxborough denies the economic loss rule applies in this case and denies Pulte's claims were based solely on Roxborough's alleged breaches of its contractual duties. In addition, Roxborough contends Commercial Union is barred from relying on the doctrine to avoid coverage because it failed to raise it as a basis for non-coverage in the Underlying Case.

Roxborough's waiver argument is unpersuasive. Roxborough cites no legal authority and offers no evidence to support its contention that Commercial Union has waived or is estopped to assert a theory of noncoverage

based on the economic loss rule.[2] Accordingly, I consider Commercial Union's motion on its merits.

### 2. *Discussion.*

■ As a general rule, no cause of action lies in tort when purely economic damage is caused by a breach of a contractual duty. *Jardel,* 770 P.2d at 1303. This "economic loss rule" prevents recovery in tort when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract. *Id.*

■ The rule prohibits parties who deal with each other at arms length through contractual arrangements from circumventing their bargained-for contractual remedies by attempting to recover purely pecuniary losses in tort. *Jardel,* 770 P.2d at 1304 (to hold otherwise permits the non-breaching party to avoid the contractual limitation of remedy); *see Colorado Nat'l Bank v. Adventura Assocs., L.P.,* 757 F.Supp. 1167, 1172–73 (D.Colo.1991) (permitting parties to recover economic losses under a tort theory "would frustrate" the ability of contracting parties to allocate the risk of loss and, therefore, "would undermine" certainty in commercial practices). Because Pulte sought to recover only economic losses, Commercial Union contends it was prohibited in the Underlying Case from recovering against Roxborough in tort.

■ The "economic loss rule" is not absolute. Its application is limited to cases involving economic loss only. Further, it does not preclude the assertion of claims to recover for physical injury to property or persons because, "in that case, the duty breached generally arises independent of the contract." *Jardel,* 770 P.2d at 1304.[3] Com-

---

2. I note that to prevail on a claim for equitable estoppel, four elements must be established: "[1] the party to be estopped must know the facts; [2] this party must intend that his or her conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; [3] the party asserting the estoppel must be ignorant of the true facts; and [4] the party asserting the estoppel must rely on the other party's conduct to its injury." *See Department of Health v. Donahue,* 690 P.2d 243, 247 (Colo.1984).

3. In addition, liability in tort and in contract can coexist in actions where the negligent performance of a contractual duty results in property damage, *see Metropolitan Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313 (Colo.1980) (contractor liable in contract and in tort for failure to inspect motor he installed in plaintiff's boiler); where the conduct is intentional, rather than negligent conduct, *see Iverson v. Solsbery,* 641 P.2d 314 (Colo.App.1982) (seller of property that had been remodeled in violation of building code liable to subsequent purchaser because conduct amount-

mercial Union concedes this, but denies Pulte's claims implicated noncontractual duties because only individual homeowners, not Pulte, suffered any injury to property.[4]

I find the use of the rule in the insurance context troublesome generally and specifically question its applicability in this case. As an initial matter, Commercial Union's argument that it owed Roxborough no indemnification duty under the Policies because *Pulte's* claims Roxborough settled sounded in contract, rather than tort, is a novel one.[5] Commercial Union cites no case in which an insurer invoked the rule in this manner and I find no reasoned basis for doing so.

Further, that the rule would apply to Pulte's claims in the Underlying Case is dubious in any event. Pulte's claims arose out of a contract for the purchase and sale of real property, not commercial products or the performance of commercial services. The claims involved allegations of intentional misconduct on Roxborough's part and breaches of duties of care independent of Roxborough's purported contractual obligations.[6]

Additionally, and contrary to the facts in *Jardel,* Pulte's claims clearly involved property damage. Commercial Union's assertion that such damage should be ignored for the purposes of the economic loss rule because it was suffered by the homeowners, not Pulte, is unsupported and unpersuasive.

The contractual relationship at issue is that between Roxborough and Commercial Union for insurance coverage. The question to be decided is whether the Policies require

Commercial Union to indemnify Roxborough for amounts it agreed to pay Pulte in settlement of Pulte's claims in the Underlying Case. While that inquiry may require the factfinder to consider the nature of Pulte's claims and the scope of the Pulte–Roxborough relationship, it does not support the entry of judgment in favor of Commercial Union on the coverage issues at bar under the economic loss rule. Accordingly, I deny Commercial Union's Motion for Summary Judgment Due to Absence of Viable Noncontractual Claims Against Insured.

B. *Plaintiff's Motion for Partial Summary Judgment Regarding Policies Under Which Coverage May Exist.*

For three one-year periods from February 1986 through February 1989, Commercial Union issued to Roxborough successive comprehensive general liability primary policies ("Primary Policies") with per occurrence and aggregate limits of $500,000 and umbrella policies ("Umbrella Policies") with per occurrence and aggregate limits of $1,000,000 over the primary coverage (together, the "Policies"). The total amount of potential coverage under the Policies is $4,500,000.

In this motion for summary judgment, Commercial Union seeks a declaration of the limits of its potential liability under the Policies.

To the extent it is liable at all to indemnify Roxborough for Pulte's claims in the Underlying Case, Commercial Union contends its liability is limited to the coverage available

ed to intentional tort); or claims for negligent misrepresentation. *See Kellogg v. Pizza Oven, Inc.,* 157 Colo. 295, 402 P.2d 633 (1965).

**4.** Commercial Union contends that at the time the structural damage in this case occurred, Pulte had sold the property purchased from Roxborough to individual homeowners. As a result, Commercial Union argues the only persons with viable tort claims against Roxborough were the homeowners. Pl.'s Reply Supp.Mot.Summ.J. at 3, n. 1.

**5.** In essence, Commercial Union urges application of the economic loss rule to "protect" the contractual relationship between Pulte and Roxborough. Citing *Adventura,* Commercial Union argues that a characterization of Pulte's claims in the Underlying case as sounding in tort would

"undermine" the Pulte–Roxborough relationship and "frustrate" the ability of commercial entities like them to allocate the risk of pecuniary loss. *See* Pl.'s Br.Supp.Mot.Summ.J. at 6–7. Commercial Union's use of the economic loss rule in this manner is strained and self-serving.

**6.** Specifically, Pulte alleged that Roxborough negligently installed and maintained certain underground utilities that caused water to intrude into the soils underlying the subdivision; negligently installed and maintained certain underground utilities which also leaked in to the soil; and misrepresented and concealed certain conditions in the land it sold to Pulte which rendered the land unsuitable for construction. Each of these allegations implicates duties Roxborough owed Pulte independently of their contract for the purchase and sale of real property.

under the single policy in effect at the time the first structural damage to the homes became manifest, i.e., the combined 1986 primary and umbrella policy limits of $1,500,-000. According to Commercial Union, the lenses, leaking pond, and water migration constituted a single set of conditions or causes from which all of the damage to the homes emanated. Under the terms of the Policies and as a matter of Colorado law, Commercial Union maintains these conditions constitute a single "occurrence" of damage for the purpose of coverage.

Commercial Union contends certain provisions in each of its primary policies limit its liability for damages arising from a single "occurrence" of loss to the coverage available under a single policy. Accordingly, Commercial Union concludes the maximum amount of coverage available for the damage to the 180 homes was the $1,500,000 available under the primary and umbrella policies in effect when the conditions first arose, i.e. 1986.

Roxborough denies Pulte's damages arose from a "single occurrence" and denies the "manifestation" trigger for coverage applies. Roxborough contends there were "multiple occurrences" of loss during each of the three policy years, which triggered $4,500,000 in potential coverage.

According to Roxborough, the structural damage at issue in the Underlying Case was the result of the continuous and progressive migration of water through the Property over time. The water caused damage to homes built in different areas of the Property at different times during the three policy years. Roxborough contends that under Colorado law, these facts establish "multiple occurrences" of loss, which triggered coverage under all six Policies rather than solely under the policy in effect when damage to the first home became manifest. At a minimum, Roxborough contends there are factual disputes precluding entry of partial summary judgment in favor of Commercial Union on the amount of available coverage issue.

In statements made during the November 1993 summary judgment hearing, Chief Judge Matsch agreed with Roxborough that the "factual predicate" for Commercial Union's "rather alarming" position had not been established and expressed doubt that it could be resolved on a motion for summary judgment. *See* Rep.Tr. 11/18/93 Hg. at 35–38. Commercial Union responded that its argument was based solely on a question of law, assuming the facts as alleged by Roxborough. My review of the cases cited suggests Colorado law on the issue is far from clear and, as Chief Judge Matsch portended, fact driven. I decline to engage in what, at this stage of the proceedings, is the largely academic exercise of determining which trigger theory best fits the complex and technical causation theories propounded by the parties' various experts.

■ Further, Commercial Union's argument is premature for the additional reason that it may be rendered moot by a ruling in favor of Roxborough on its bad faith counterclaim. I have already ruled that the question of whether or not coverage exists in this case is not amenable to resolution on a motion for summary judgment. Should it ultimately be determined that coverage exists, Commercial Union could be liable for the entire amount of the ensuing judgment irrespective of policy limits.[7] *See generally,* William M. Shernoff, Sanford M. Gage, Harvey R. Levine, *Insurance Bad Faith Litigation* § 3.08[2] (Matthew Bender & Co., 1996) (In successful action for bad faith failure to settle, insured recovers difference between the total amount of the judgment in the third party suit and the amount of the policy limits; if insurer has not already paid policy limits, then that figure is added to the measure of damages).

For both reasons, I deny Commercial Union's Motion for Partial Summary Judgment Regarding Policies Under Which Coverage May Exist.

C. *Roxborough's Second Motion for Partial Summary Judgment* (filed August 22, 1994).

In this motion, Roxborough seeks entry of partial summary judgment on the following

---

7. The question remains, however, whether a judgment entered by stipulation of the insured and the third-party claimant carries the same legal effect for the purposes of a bad faith failure to settle action against the insurer as would the entry of judgment by a court after a trial on the merits.

claims or issues: (1) Commercial Union's Fourth Claim for Relief regarding rescission or reformation of the Policies; (2) a declaration of coverage for completed operations under certain of the Policies; and (3) a declaration of a lack of claims relating to completed operations. The motion, and Commercial Union's response to it, rehash arguments made and rejected by Chief Judge Matsch in the initial round of summary judgment motions in this case. Because Roxborough offers no additional evidence or argument to support its positions, I deny the motion in all respects.

### 1. Commercial Union's Claim for Rescission or Reformation of the Policies.

■ In its Fourth Claim for Relief, Commercial Union asserts Pulte's claims in the Underlying Case arose out of Roxborough's "completed operations" and maintains such operations were excluded from coverage. According to Commercial Union, Roxborough made fraudulent statements or fraudulently omitted facts in its application for coverage regarding the status of subdivision improvements and the existence of any lakes or ponds on the Property. Based on these allegations, Commercial Union asserts that it is entitled to "rescission of the insurance policies or in the alternative, reformation of the policies to exclude any coverage for liabilities arising out of the insured's business and property interests which were the subject of the misrepresentations." (Third Am.Compl., ¶ 32.)

Roxborough moves for summary judgment, arguing Commercial Union is estopped from asserting its Fourth Claim for Relief because it was untimely raised. Roxborough relies on *United States Fidelity & Guar. Co. v. Budget Rent–A–Car Sys., Inc.,* 842 P.2d 208, 210 n. 3 (Colo.1992), which provides that an insurer must raise or reserve all defenses known to it within a reasonable time or be estopped from asserting them. Roxborough claims Commercial Union had ample time throughout the three years it underwrote Roxborough's insurance to "discover" the alleged fraud by apprising itself of the status of the property being insured and the nature of Roxborough's operations, but never did so.

Instead, Commercial Union assumed Roxborough's defense, and waited until seven months after judgment in the Underlying Case had been entered (and seven months into the instant declaratory judgment action) to assert for the first time defenses based on Roxborough's alleged misrepresentations and omissions in the application process. Roxborough argues this delay, together with the fact that the reservation of rights letters pursuant to which Commercial Union tendered its defense of Roxborough in April 1990 failed to mention the defense, estops Commercial Union from asserting the defense at this late date.

Though compelling, Roxborough's estoppel argument is inappropriate for summary disposition. Commercial Union's defense sounds in fraud. Whether it was timely or untimely raised depends on when the facts giving rise to the claim were, or reasonably should have been, discovered. Roxborough asserts Commercial Union's conduct was unreasonable; but that is a question of fact.

In addition, there are factual disputes regarding the sufficiency of Commercial Union's reservation of rights letters with respect to the rescission/reformation defense, as well as Commercial Union's intent or deliberateness in failing to raise the defense earlier, and the resulting prejudice to Roxborough. *See Gulf Ins. Co. v. State of Colorado,* 43 Colo.App. 360, 607 P.2d 1016, 1019 (1979) (denying motion for summary judgment on estoppel claim based on disputed facts regarding control of litigation, timeliness of disclaimer, and possible prejudice to insured). If the reservation of rights letters adequately preserved Commercial Union's fraud defense, Roxborough would have the burden of showing reliance to its detriment before estoppel can bar defense of non-coverage. *See Hartford Accident & Indem. Co. v. Sanford,* 344 F.Supp. 969, 972 (W.D.Okla. 1972); *c.f. Pendleton v. Pan Am. Fire & Casualty Co.,* 317 F.2d 96, 99 (10th Cir.), *cert. denied,* 375 U.S. 905, 84 S.Ct. 196, 11 L.Ed.2d 145 (1963) (there is a presumption of prejudice where an insurer defends unconditionally without a reservation of rights).

These issues are inappropriate for resolution on a motion for summary judgment.[8]

Based on the foregoing, I deny Roxborough's Motion for Partial Summary Judgment on Commercial Union's Fourth Claim for Relief.

### 2. *Completed operations.*

Commercial Union's principal defense to coverage in this case is that Pulte's claims in the Underlying Action were based on Roxborough's "completed operations," for which there is no coverage under the Policies. Commercial Union concedes the 1987 and 1988 umbrella policies do not expressly exclude completed operations coverage and does not deny those policies specifically include a definition for the term. Nevertheless, Commercial Union contends the parties expressly negotiated and agreed such coverage would neither be provided nor paid for.

As it did in the first round of summary judgment motions argued before Chief Judge Matsch in November 1993, Roxborough claims it is entitled to partial summary judgment on Commercial Union's "completed operations" defense because (1) as a matter of law, the Policies did not exclude coverage for completed operations; and (2) even if such coverage were excluded, Pulte's claims in the Underlying Case did not relate to completed operations.

Chief Judge Matsch has already rejected the first contention, declining to rule against Commercial Union under the "old saw of ambiguities are resolved against the insurance company" and finding sufficient factual disputes regarding the parties' intent to survive a motion for summary judgment. (*See* Tr., 11/18/93 Hg. on Cross Mots.Summ.J. at 26, 28:) Because Roxborough in its current motion offers no additional facts or legal argument to support its position, I see no reason to alter the law of the case in this regard.

Next, Roxborough asserts the question of whether the Policies provided "completed operations" coverage is immaterial because Pulte's claims in the Underlying Case did not relate to Roxborough's "operations" or to operations that were "complete." Roxborough concedes the definition of "operation" in the Policies is incomplete and that the expert witnesses in this case have voiced differing opinions as to whether the damage to homes was the result of "completed operations." Nevertheless, Roxborough argues the question should not be submitted to a jury.

Roxborough asserts Pulte's claims in the Underlying Case did not fall within any of the competing definitions of "operations" elicited from expert witnesses during discovery. Instead, they related to the sale of land that was unsuitable for building and for damages caused by a leaking pond. Specifically, Roxborough asserts the claims had "*nothing* to do with [Roxborough's] construction of roads, drainage ditches and sewage pipes (i.e., its 'operations')," and, with respect to the leaking pond, nothing to do with an "operation" that was "complete." (Defs.' Mem Br.Supp.Second Mot. for Partial Summ.J. at 16 (emphasis original).) "Given the nature of the claims in the Underlying Case, and the elusive phraseology contained in the completed operations hazard [exclusion]," Roxborough argues, "the jury should not be put in the untenable position of trying to declare the winner of a 'battle of the experts' concerning the proper interpretation and application of the provision." (Defs.' Reply Supp.Second Mot.Partial Summ.J. at 13–14.)

▮ Roxborough suggests I, rather than a jury, should decide the question of whether Pulte's claims related to "completed operations" because to do otherwise would " 'require the parties ... to provide the jurors with legal advice through the guise of expert testimony.' " (Defs.' Reply at 14, quoting *Tozer v. Scott Wetzel Serv., Inc.,* 883 P.2d 496, 499 (Colo.App.1994).) I am unpersuaded. This case at its core involves highly technical factual information regarding the nature and cause of the damage to the Pulte homes. That jurors will be forced to declare the victor in a "battle of the experts" is evident from the parties' arguments and the type of evidence already marshalled. Such is

---

8. As discussed at Section II(E), *infra*, Roxborough's reliance on *Cowan v. Insurance Co. of North America,* 22 Ill.App.3d 883, 318 N.E.2d 315, 326 (1974), to argue that Commercial Union's reservation of rights letters are inadequate as a matter of law, is misplaced.

the grist of contemporary litigation. Roxborough's argument provides no reasoned basis for taking this issue from the jury.[9]

Roxborough's Second Motion for Partial Summary Judgment is denied in its entirety.

### D. *Roxborough's Second Supplemental Motion for Partial Summary Judgment* (filed Sept. 2, 1994).

In this motion, Roxborough seeks a declaration that its settlement with Pulte in the Underlying Case was proper as a matter of law. Provided the settlement was reasonable, Roxborough seeks a further declaration that Commercial Union is liable for the full judgment amount of $6,000,000, including those portions in excess of policy limits.

In its claims for noncoverage and in its response to Roxborough's counterclaim for bad faith failure to settle, Commercial Union alleges that Roxborough's settlement with Pulte was collusive and violated its duty under the Policies' "no action" provisions as well as its duty to cooperate with Commercial Union in its defense. Commercial Union argues the facts and circumstances surrounding its determination not to settle and the intent of Roxborough and Pulte in entering into it are questions of fact to be determined at trial. I agree.

Further, none of the cases Roxborough cites in its motion involve a situation where, as here, the insured is seeking to recover for a *stipulated* judgment in excess of policy limits, rather than for a judgment in excess of policy limits entered on the merits of the third-party claimant's claim by the court. The propriety of such a settlement is not so clear cut under the law as would justify the entry of summary judgment in Roxborough's favor. *See Bernhard v. Farmers Ins. Exch.*, 885 P.2d 265, 269–70 (Colo.App.1994) (ques-

tion of whether insurer liable for excess judgment entered against insured generally one of fact), *aff'd*, 915 P.2d 1285 (Colo.1996), *reh'g denied.*

Roxborough's Second Supplemental Motion for Partial Summary Judgment filed September 2, 1994 should be denied.

### E. *Plaintiff's Motion for Partial Summary Judgment (Estoppel Claim) and Defendant's Renewed Cross–Motion for Partial Summary Judgment.*

On October 16, 1992, Commercial Union filed a motion for summary judgment, asserting that coverage for complete operations hazards was not provided by any of the policies and that Pulte had admitted that all damages sought against Roxborough arose from such completed operations. Roxborough asserted several reasons why summary judgment should be denied, but also filed a cross-motion for summary judgment on grounds Commercial Union was estopped to deny coverage because of the inadequacy of the initial and supplemental reservation of rights letters Commercial Union provided Roxborough before assuming its defense in the Underlying Case.

At the November 1993 hearing, Chief Judge Matsch ruled there were issues of material fact precluding summary judgment on the completed operations issue and denied the motions. He did not address the estoppel issue, which the parties agree should be determined as a matter of law.

Commercial Union moves for summary judgment, arguing Roxborough's estoppel claim fails as a matter of law regardless of the adequacy or inadequacy of the April 1990 reservation of rights letters. Commercial Union relies on *Hartford Live Stock Ins. Co. v. Phillips*, 150 Colo. 349, 372 P.2d 740, 742

---

**9.** Further, the *Tozer* case is entirely inapposite. The question in *Tozer* was whether a worker's compensation insurance adjuster acted unreasonably in commencing legal proceedings, including undertaking an administrative appeal, rather than simply settling the claimant's claim. The court determined the appropriate standard was whether the adjuster's conduct was "frivolous," i.e., whether there was any "'rational argument based on law or evidence' that could be made in support of the appeal." The court

found the question was one for the court, rather than for lay fact finders. 883 P.2d at 499. There simply is no comparison between the question of whether the initiation of legal proceedings was "frivolous"—which is generally a question of law—and the question presented in the instant action, namely, the nature of Roxborough's "operations" and whether "completed operations" gave rise to Pulte's damages in the Underlying Case.

(1962), which provides that the doctrine of estoppel is unavailable under Colorado law to bring within the coverage of a policy risks not covered, or expressly excluded, by its terms. Commercial Union maintains the policies expressly excluded completed operations hazards from coverage, and claims it is entitled to judgment as a matter of law.

▮▮▮▮ Under Colorado law, an insurer may by its conduct be estopped from denying its policy provided coverage for a risk the insured was led honestly to believe was covered. *General Accident & Life Assur. Corp. v. Mitchell*, 128 Colo. 11, 259 P.2d 862, 868 (1953). Where an insurer defends its insured unconditionally and without any reservation of rights, it may be estopped to deny coverage. *Pendleton v. Pan American Fire & Casualty Co.*, 317 F.2d 96, 99 (10th Cir.1963). Further, an insurer may be estopped to deny coverage even if it defends under a reservation of rights if the reservation was untimely and the insurer's original intent in defending the action is in dispute. *Board of County Comm'rs v. Guarantee Ins. Co.*, 90 F.R.D. 405, 409 (D.Colo.1981) (Kane J.) (factual dispute regarding timeliness of liability disclaimer precluded entry of summary judgment).

▮▮▮ While courts may apply the doctrine of estoppel to defeat a forfeiture of coverage, the doctrine " 'cannot be invoked to create a primary liability and bring within the coverage of the policy risks not included or contemplated by its terms.' " *Phillips*, 372 at 742 (quoting 29A Am.Jur. § 1135, p. 289); *see Sellers v. Allstate Ins. Co.*, 82 F.3d 350, 353 (10th Cir.1996) (applying similar Oklahoma law) (where uninsured motorist coverage under policy was excess up to $50,000 and insured had already received that amount from primary insurer, doctrines of waiver and estoppel could not be used to create coverage where none otherwise existed); *Western Ins. Co. v. Cimarron Pipe Line Constr., Inc.*, 748 F.2d 1397, 1399 (10th Cir. 1984) (also applying Oklahoma law).

Roxborough denies *Phillips* applies in the third-party liability context because there, unlike in the case of primary insurers, the insurer owes the insured a fiduciary duty of loyalty. Roxborough asserts this duty estops

an insurer from denying coverage when it assumes an insured's defense without adequately reserving its rights, even though coverage may thereby be extended beyond the policy's terms. Defs.' Br. in Opposition to Pls.' Mot.Partial Summ.J. at 4.

Roxborough relies on *Pendleton*, 317 F.2d at 99 and *Ebert v. Balter*, 83 N.J.Super. 545, 200 A.2d 532, 537 (1964), to support its argument. Both cases are distinguishable. In *Pendleton*, the insurer defended its insured unconditionally, without any reservation of rights, and was deemed estopped in an action upon the policy from asserting the defense of forfeiture or noncoverage. In *Ebert*, the insurer attempted to withdraw its defense of insured's claim 31 months after undertaking it on grounds the accident occurred the day before the policy became effective. The court found the insurer was negligent in failing to discover the noncoverage at the outset, and deemed it estopped to deny liability even though that meant extending the insurer's liability beyond the policy's terms. There is no allegation of negligence in the instant action and *Ebert* simply does not apply.

While Roxborough has cited no competent authority to counter the holding in *Phillips*, I disagree that *Phillips* permits me to enter summary judgment against Roxborough on its claim for estoppel. Under the law of this case, the premise underlying Commercial Union's argument, i.e., that Pulte's damages arose out of completed operations and the Policies expressly excluded completed operations coverage, is in dispute. Commercial Union will be entitled to judgment on Roxborough's estoppel counterclaim under *Phillips* only if it is determined that the Policies did, in fact, exclude coverage for completed operations.

▮▮▮ Next I consider Roxborough's contention in its Renewed Cross–Motion for Partial Summary Judgment that Commercial Union's reservation of rights letters were inadequate as a matter of law to preserve the completed operations exclusion defense.

Roxborough relies on *Cowan v. Insurance Co. of North America*, 22 Ill.App.3d 883, 318 N.E.2d 315, 326 (1974), to argue that, in the

third-party liability context, a reservation of rights must specifically identify the coverage defense the insurer may later raise or else be deemed inadequate as a matter of law. Roxborough contends Commercial Union's reservation of rights letters "essentially regurgitated whole portions of the respective policies" and did not specify the defenses being reserved. By waiting until only five days before trial to clarify that no coverage was available under the policies' completed operation hazard exclusion, Roxborough claims Commercial Union is estopped from asserting the defense under *Cowan.*

Roxborough's reliance on *Cowan* is misplaced. The issue in *Cowan* was whether an insured, by virtue of the verdict in the underlying assault and battery case, was collaterally estopped to deny his conduct was intentional and, therefore, not covered by his insurance policy. The court held the doctrine of collateral estoppel did not apply, because the issues regarding coverage and the issues in the underlying action were different. 318 N.E.2d at 322–23. The adequacy of the insurer's reservation of rights was not considered; it was presumed. *Id.* at 326. The court addressed the issue only in *dicta.*

"[T]o be effective," the *Cowan* court stated, a reservation of rights "must be communicated to the insured, and must fairly inform the insured of the insurer's position." *Cowan,* 318 N.E.2d at 322–23 (citing 44 Am. Jur.2d Insur. § 1556). Where the existence of a policy defense turns upon facts to be determined in the litigation, however, the court reasoned that "bare notice" of a reservation of rights was insufficient unless it "ma[de] specific reference to the policy defense [that] may ultimately be asserted." *Id.* at 326.

The need for specificity, the court explained, arose because of the potential conflict of interest the insurer's assumption of the defense creates. "If the insurer has adequately informed the insured of [the potential conflict of interest], and the insured accepts the tender of defense counsel, the insurer has not breached its duty of loyalty and is not equitably estopped from denying its obligation to indemnify." *Id.; see id.* at

323. If the insurer has not adequately informed the insured, the insurer may be estopped because it has "prejudiced the insured's right to control his own defense." *Id.* at 320.

Roxborough does not explain how the *Cowan dicta,* even if one chose to follow it, would require entry of summary judgment in its favor on the counterclaim. None of the factual predicates underpinning the *Cowan* specificity "requirement" has been established: Roxborough does not describe the conflict of interest the reservation of rights letters allegedly failed to disclose and offers nothing beyond conclusory allegations regarding the prejudice Commercial Union's conduct had on Roxborough's right to control its own defense.

Accordingly, Roxborough's Renewed Cross–Motion for Summary Judgment on its estoppel counterclaim is denied. The claim is one for the jury.

### III. *CONCLUSION.*

With respect to the six pending motions for summary judgment in this case, I rule as follows:

(1) Plaintiff's Motion for Summary Judgment Due to Absence of Viable Non–Contractual Claims Against Insured (filed February 18, 1994) is DENIED;

(2) Plaintiff's Motion for Partial Summary Judgment Regarding Policies Under Which Coverage May Exist (filed February 18, 1994) is DENIED;

(3) Defendant's Second Motion for Partial Summary Judgment (filed August 22, 1994) is DENIED;

(4) Defendant's Second Supplemental Motion for Partial Summary Judgment (filed September 2, 1994) and Renewed Cross–Motion for Partial Summary Judgment (estoppel claim) (filed October 4, 1994) are DENIED; and

(5) Plaintiff's Motion for Partial Summary Judgment (estoppel claim) (filed August 22, 1994) is DENIED.

IT IS FURTHER ORDERED that on or before December 10, 1996, the parties shall submit a Pretrial Order and proposed jury

instructions in the manner and form set forth in the materials attached hereto. A trial date will be set upon the entry of a Pretrial Order.